464 So.2d 207 (1985)
GULF INSURANCE CORPORATION, Appellant,
v.
CONTINENTAL CASUALTY COMPANY, and United States Fire Insurance Company, Appellees.
No. 83-2914.
District Court of Appeal of Florida, Third District.
February 19, 1985.
*208 Blackwell, Walker, Gray, Powers, Flick & Hoehl and James E. Tribble, Miami, for appellant.
Peters, Pickle, Flynn, Niemoeller, Stieglitz & Downs and Steven R. Berger, Stephens, Lynn, Chernay & Klein and Robert M. Klein and Caron E. Speas, Miami, for appellees.
Before BARKDULL, HENDRY and BASKIN, JJ.
HENDRY, Judge.
Gulf Insurance Corp. (Gulf), plaintiff below, appeals two adverse summary final judgments terminating Gulf's action for contribution to recover from Continental Casualty Co. (Continental) and United States Fire Insurance Co. (U.S. Fire) a portion of monies paid by Gulf in settlement of a legal malpractice action.
This case arose as a result of attorney Jon E. Krupnick's representation of Anaconda Real Estate Investment Trust (Trust) in a suit against one Howard. Krupnick's representation of the Trust began on May 12, 1972 and culminated with the entry, on February 26, 1974, of a final judgment in excess of 1.8 million dollars in favor of Howard on his counterclaim. (The Howard v. Anaconda matter.)
In April, 1977 the stockholders of the Trust filed a derivative suit through one Gilbert against Krupnick. (Gilbert v. Krupnick.) This suit was settled for $750,000 in March, 1979, with Gulf paying $500,000 and Continental paying $250,000 towards the settlement.
Krupnick was insured under several different malpractice policies during the period May, 1972 to February, 1974. Continental had issued two successive policies to Krupnick, one covering the period commencing November 4, 1971 and ending November 4, 1972 and another covering the period commencing November 1, 1972 and ending November 1, 1973, each with liability limits of $250,000 per claim. U.S. Fire issued a policy providing one million dollars "excess" professional liability coverage over primary limits of $250,000 for the period between April 26, 1971 and April 26, 1974. During the month of January, 1974, Krupnick was insured under a twenty-one day binder issued by St. Paul Fire and Marine Insurance (not a party to this appeal). Commencing on February 1, 1974 and continuing until February 1, 1975, Gulf provided Krupnick with professional liability coverage having policy limits of one million dollars per occurrence.
Gulf instituted suit against the other insurers seeking contribution based upon allegations that the $500,000 paid by Gulf toward the settlement far exceeded its pro rata share of the liability and that, for their part, Continental and U.S. Fire paid less than their pro rata share. (U.S. Fire did not contribute towards the settlement.) The basis for Gulf's contribution claim was that the alleged acts and omissions constituting professional negligence by Krupnick spanned a period of 656 days and Gulf provided coverage for only 26 days of that period and, accordingly, should only pay that portion of the settlement proportionate to its 26-day coverage. Gulf argued that since Krupnick's negligent acts could not be pinpointed to a specific date, all the insurers should bear the cost on a "per diem" basis. Gulf proposed that the various insurers' liability over the 656 day period could be allocated as it is in asbestos cases, where the acts contributing to an injury may span a thirty year period. See Insurance Company of North America v. Forty-Eight Insulations, Inc., 451 F. Supp. *209 1230 (E.D.Mich. 1978), aff'd, 633 F.2d 1212 (6th Cir.1980), aff'd on rehearing, 657 F.2d 814 (6th Cir.), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). Thus, Gulf contended it should bear the liability for only 26 days of coverage or $33,333.33. The other carriers would be liable as follows under Gulf's theory. Continental's liability under its first policy covering the period from November 4, 1971 to November 4, 1972 would be $223,717.95. Continental's liability under its second policy covering the period from November 1, 1972 to November 1, 1973 would be $250,000. U.S. Fire, as insurer providing excess coverage during the period of the second Continental policy, would be liable for $216,025.65. St. Paul Fire & Marine Insurance, an insurer which settled with Gulf at the initial stages of this litigation, would be liable in proportion to the 21-day period for which it provided a binder of primary coverage, for $26,923.08. (These amounts total the $750,000 settlement amount.)
Following the filing of answers by all parties and discovery, both U.S. Fire and Continental filed motions for summary judgment. The trial court, after hearing argument, entered a summary final judgment in favor of Continental. The judgment incorporated the court's findings that Gulf's contention that coverage should be apportioned on a per diem basis was without merit as the insurance policies did not provide for that type of coverage; that Continental's maximum limit of liability under their insurance policies covering the alleged acts in Gilbert v. Krupnick was $250,000 for all claims made against Krupnick for professional services rendered in the Howard v. Anaconda matter; and that Continental's payment of $250,000 towards the settlement was its proper pro rata share. A separate [summary] final judgment was entered in favor of U.S. Fire based upon the trial court's rejection of the "per diem" theory of contribution as a matter of law, the court's finding that the settlement was properly pro rated between the primary carriers, and the court's finding that, in accordance with its interpretation of the applicable policies, U.S. Fire's coverage had not been invoked.
On appeal, Gulf argues that the summary judgments were erroneously entered in that the trial court improperly rejected the apportionment of liability coverage commensurate with Continental's period of coverage, improperly held that the maximum limit of liability under Continental's two successive liability insurance policies was $250,000, and improperly found U.S. Fire not to be liable as an excess insurer over Continental's second policy. We agree with the trial court's determinations and affirm the summary final judgments under review.
Gulf's theory of coverage on a per diem basis is not supported by the language of the applicable insurance policies. Neither Gulf's nor Continental's policies contain any provision for allocating risk and liability on a per diem theory of coverage. Continental's policy, however, contained a provision regarding "other insurance" insuring the same loss. It read as follows:
If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, with respect to acts or omissions which occur prior to the policy period, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance and shall then apply only in the amount by which the applicable limit of liability of this policy exceeds the sum of the applicable limits of liability of all such other insurance.
It is axiomatic that courts will not rewrite insurance policies, nor add meaning that is not present, or otherwise reach results contrary to the intentions of the parties. Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So.2d 938 (Fla. 1979). Where two or more policies of *210 insurance each contain similar "other insurance" clauses whereby the insurers attempt to limit their liability for an insured's loss covered by those policies, proration according to the policy limits is the proper method of determining the liability of the respective insurers. See Demshar v. AAA-Con Auto Transport, Inc., 337 So.2d 963 (Fla. 1976); State Fire & Casualty Co. v. National Indemnity Co., 225 So.2d 570, 572 (Fla. 3d DCA 1969); Allstate Insurance Co. v. American Casualty Co., 200 So.2d 587 (Fla. 3d DCA 1967).
The trial court in the instant case having properly construed the applicable insurance policies and having correctly determined the obligations of the insurers under the policies and the controlling law, we find no error in the entry of the summary final judgments under review. Furthermore, as the settlement was fulfilled by the primary insurers without extending their coverage beyond policy limits, the trial court correctly determined that U.S. Fire's excess liability coverage was not invoked and thus U.S. Fire was not obligated to contribute towards the settlement. We accordingly affirm the judgments under review.
Affirmed.