**HAROLD S. SCHWARTZ & ASSOCIATES, INC., et al., Plaintiffs-Respondents,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant-Appellant.**

**No. 49304.**

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 10, 1985.

Motion for Rehearing and/or Transfer Denied Jan. 28, 1986.

Application to Transfer Denied March 25, 1986.

Lawrence B. Grebel, St. Louis, for defendant-appellant.

Thomas M. Boudreau and Thomas McKee Dee, St. Louis, for plaintiffs-respondents.

REINHARD, Judge.

Defendant appeals from an order entered on plaintiffs' petition for declaratory judgment. Plaintiff Harold S. Schwartz & Associates, Inc. is a Missouri Corporation that does business as radio station KCGL in Utah. The other plaintiffs are officers and employees of the corporation. Defendant Continental Casualty Co. (Continental) issued an insurance policy to the corporation, providing libel and slander coverage for the corporation, its officers and employees. A defamation action was brought against plaintiffs in Utah. Plaintiffs subsequently demanded of defendant reimbursement of defense costs under the policy. Upon defendant's refusal to pay the full amount requested by plaintiffs, this action ensued. The defamation suit was settled, with the consent of the insurer, whereupon plaintiffs amended their petition to include settlement costs, among other requests. The case was tried before the court without a jury. The trial court entered judgment for plaintiffs in the amount of $24,792.88 together with interest from the date of settlement. The trial court also ordered defendant to pay $5,000.00 of plaintiffs' attorneys'

fees for the declaratory judgment action. We affirm in part and reverse in part.

The insurance policy obligated the insurance company to pay for:

[A]ll loss which the Insured becomes obligated to pay as damages or equitable relief because of liability imposed by law, settlement, agreement or contract caused by or resulting from:

A. Broadcasting Liability. Injury arising out of:

1. Libel, slander or other forms of defamation, ...;

\* \* \* \* \* \*

committed in the utterance or dissemination of matter broadcast telecast, distributed, exhibited or advertised during the policy period....

Further, the policy obligated the insurance company to pay:

[A]ny investigative, discovery, adjustment and legal expense (herein called "defense costs") and court costs which are incurred as a result of a claim or suit alleging damages because of the causes of action specified above, even if such claim or suit is groundless, false or fraudulent.

\* \* \* \* \* \*

If suit is brought against the insured. The Insured shall employ counsel of its choice after consultation with the Company for the defense of such suit, and shall file proper pleadings in said suit within the time required by law for filing same. If the suit is brought to trial, the Insured shall conduct the defense thereof, but the Company, at its own election and expense, shall have the right to associate with the Insured in the defense. In such event the Insured and the Company shall cooperate fully.

*The Insured shall not settle any claim or suit involving payment by the Company under this policy unless the prior consent of the Company shall have been given in writing, except at the Insured's own expense.* (emphasis ours).

\* \* \* \* \* \*

The effective date of the policy was August 1, 1982, and coverage of $5,000,000 and a deductible of $1,000 for each "occurrence" was renewed through November 30, 1983.

"Occurrence" was defined in Section V(E) to mean:

[A]ll claims, suits and expenses arising out of the same injurious act, error or omission or the utterance or dissemination of the same injurious matter or material, regardless of the frequency of repetition thereof or the number or kind of media used, which occurs or which is broadcast, telecast, distributed, published, exhibited or advertised on one date or a series of dates, at regular or irregular intervals, during the policy period.

If any injurious matter has been uttered or disseminated or act committed prior to the effective date of the policy and is repeated or continued thereafter, then the limit of liability under this policy, including reimbursement, if any, for court costs, and investigative, discovery, adjustment and legal expense, shall be limited to the proportion of the total loss and expense which the number of utterances or disseminations during the period of this policy bears to the total number of all utterances or disseminations, ....

On March 15, 1983, plaintiffs were sued in Utah state court for allegedly defamatory radio broadcasts. The pleading did not specify the dates involved or the number of broadcasts, stating only that "several" defamatory programs were broadcast "on various dates between March 1, 1982, and March 20, 1982," and that air time was also made available in March of 1983 to various defendants in the Utah suit. In their answer, the plaintiffs here denied that the broadcasts were defamatory, and affirmatively pleaded that all or part of the claims were barred by the one year Utah statute of limitations.

The insureds notified the insurer that the allegations were groundless, invoked coverage under Section I(3), and retained counsel in accordance with defendant's sugges-

tions. On November 21, 1983, insureds filed this declaratory judgment action against the insurance company seeking reimbursement for their entire defense costs to date. The defamation lawsuit, which sought actual damages of $2,500,000 and punitive damages of $7,500,000, was settled in March 1984 with no admission of liability for $2,000. The insurer consented to the settlement agreement, although it contained no cost allocation provision pertaining to broadcasts occurring prior to the policy's effective date. The settlement also included a confidentiality provision.

After the settlement of the defamation lawsuit, plaintiffs filed an amended petition seeking payment from the insurer for the $2,000 and for $23,792.88 incurred in legal fees, less a $1,000 deductible. Defendant denied recovery for the full amount, contending that Section V(E) was applicable to limit its liability to "the proportion of the total loss and expense which the number of utterances or disseminations during the period of the policy bears to the total number of all utterances or disseminations." Defendant maintained, based on the Utah pleading and a memorandum supplied it by plaintiffs' counsel, that five broadcasts occurred prior to inception of coverage, and one after, so that a one-sixth allocation of expenses was appropriate. The memo, based largely on the recollections of Kay Henry, KCGL manager and talk show host, stated that four persons who were connected with the lawsuit appeared on particular dates between March 4, 1982, and March 9, 1982, although Ms. Henry could not be "definitely sure" of the dates. Henry also recalled that one of the individuals appeared in early March of 1983. The memo additionally stated that tapes of portions of the 1982 broadcasts had been located and were non-defamatory. In ruling for the plaintiffs, the trial court found that Section V(E) was ambiguous and, therefore, should be construed against the insurer and that defendant had failed to meet its burden of proof as to facts which would limit its responsibility.

On appeal, defendant contends that the trial court erred in finding Section V(E)

ambiguous and in not applying it to this case to prorate the costs of defense and settlement on a one-sixth basis. It further asserts that the court erred in awarding the $5,000.00 in attorney's fees.

In reviewing the judgment of the trial court in a declaratory judgment action, this court will sustain the decree or judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Abco Tank & Manufacturing Co. v. Federal Insurance Co.,* 550 S.W.2d 193, 197 (Mo. banc 1977).

The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. *Grantham v. Rockhurst University,* 563 S.W.2d 147, 150 (Mo.App.1978). The intent of the parties to a contract is expressed by the natural and ordinary meaning of the language referable to it. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). The contract is ambiguous only when it is reasonably susceptible of different constructions, and in determining whether or not there is such an ambiguity as calls for construction, the whole instrument must be considered. *Id.*

We note further that where an injured party's petition states some grounds of liability covered by a policy, the insurer has a duty to defend, despite its contention that some of the allegations of the petition state a claim beyond its policy coverage. *See Butters v. City of Independence,* 513 S.W.2d 418, 424, 425 (Mo.1974). However, we see no reason why a company's ultimate liability for defense costs may not be limited (if clearly stated) to claims covered under the policy.

We conclude that Section V(E) is not ambiguous. Plaintiffs contended at trial that the term "injurious matter" in V(E) is ambiguous in that it can be reasonably construed as referring only to an actual injury, as opposed to an allegation of inju-

ry. However, this contention is not borne out by our examination of the contract as a whole. The intent of the parties to the policy was to impose liability on defendant for allegedly defamatory acts (even if groundless, false or fraudulent) occurring during the policy period.

■ The fact the trial court erred in finding an ambiguity, however, does not end our inquiry. An insurance company defending on the ground of non-coverage and relying upon a policy exclusion has the burden of proving facts which make the exclusion applicable. *Kenilworth Insurance Co. v. Cole,* 587 S.W.2d 93, 97 (Mo. App.1979).

■ Defendant contends that it is not relying upon a policy exclusion. We disagree. An exclusion provision in an insurance policy, by definition, excludes risk. It has no function to endow coverage but rather limits the obligation of indemnity. *Transport Indemnity Co. v. Teter,* 575 S.W.2d 780, 784 (Mo.App.1978). Section V(E) endows no coverage. On its face it is a limitation, stating in part, "If any injurious matter has been uttered or disseminated ... prior to the effective date of the policy and is repeated ... then the *limit of liability* under this policy, ... shall be *limited* to the proportion of total loss and expense which the number of utterances during this policy bears to the total number of utterances ..." (emphasis ours). Given defendant's reliance on a policy exclusion, the burden of proof as to facts which might limit its responsibility for plaintiffs' cost rests on defendant. The circumstances of the Utah case and its ultimate disposition reveal the difficulty of proof as to this exclusion.

■ Ordinarily, the allegations of the petition and the policy provisions form the basis of the insurer's responsibility to defend. *Zipkin v. Freeman,* 436 S.W.2d 753, 754 (Mo. banc 1968). From the petition, we can at best determine that defamatory broadcasts were alleged to have occurred prior to the effective date of the policy, and that at least one broadcast occurred after the effective date. The memo relied upon by defendant refers to broadcasts, but with little certainty as to the contents of these broadcasts. However, the most significant factor militating against defendant is that it permitted a settlement of the Utah case prior to pleading refinement and full discovery, without an agreement with the insureds as to an allocation of the cost. At time of settlement, defendant was well aware of plaintiffs' claim for complete reimbursement as this suit was pending. It believed that a settlement under these circumstances was in *its* best interest, otherwise, this settlement would not have been approved. The trial court did not err in determining that defendant should be responsible for the entire cost of defense and settlement, less the deductible.

One additional issue is raised on appeal. Defendant asserts that the trial court erred in awarding attorneys' fees to plaintiffs for the declaratory judgment action. Rule 87.-09, a reenactment of § 527.100, RSMo 1978, provides that "In any proceeding under Rule 87 [declaratory judgments] the court may make such award of costs as may be equitable and just." Plaintiffs contend that attorneys' fees are recoverable as costs under § 527.100, citing among other cases *Bernheimer v. First National Bank of Kansas City,* 359 Mo. 1119, 225 S.W.2d 745 (1949); *Von Seggern v. 310 West 49th Street, Inc.,* 631 S.W.2d 877 (Mo.App.1982); *Labor's Educational and Political Club—Independent v. Danforth,* 561 S.W.2d 339 (Mo. banc 1977). Both of the decisions cited flow from the *Bernheimer* case. The Supreme Court spoke on the subject of allowance of attorneys' fees in *County Court of Washington County v. Murphy,* 658 S.W.2d 14, 16, 17 (Mo. banc 1983), stating:

> The rule in Missouri is that absent statutory authorization or contractual agreement, each litigant, with few exceptions, must bear the expense of his own attorneys' fees (American Rule)....

> Although appellants refer to § 527.-100, RSMo 1978, which provides that the court may make an award of costs in a declaratory judgment action, they show

no statutory authorization or contractual agreement for an award of attorneys' fees to satisfy the governing rule.

The obvious exception to the rule in Missouri is represented by *Bernheimer v. First National Bank of Kansas City*, 359 Mo. 1119, 225 S.W.2d 745 (1949). Although it was a declaratory judgment action, it was filed in equity to obtain construction of a testamentary trust insofar as determining whether the minor plaintiff was the lawful issue of the body of his father. The trustees, residuary legatees and potential unborn future issue of the father were parties. In such special circumstances, the court awarded attorneys' fees to all parties for the reason that there was an ambiguity in the phrase "lawful issue" and its resolution and attendant questions were "important to the testamentary trustees in ascertaining the meaning of the will, and in charting a course for the administration of the trust estate." 225 S.W.2d at 755.

Appellants extract the statement from *Labor's Educational and Political Club—Independent v. Danforth*, 561 S.W.2d 339, 350 (Mo. banc 1977), that " 'costs' has been interpreted to include attorneys' fees." This is attributed to *Bernheimer v. First National Bank*, distinguished *supra*, and is not persuasive on the question here. *Mayor, Councilmen & Citizen, Etc. v. Beard*, 636 S.W.2d 330, 331 (Mo. banc 1982). Nothing in this case brings the parties within the *Bernheimer* exception. The Trial Court was without power to award the attorney's fee. (citations omitted).

We conclude that plaintiffs have shown no special circumstances which would bring this case within the *Bernheimer* exception. The trial court was without authority to award attorneys' fees for the declaratory judgment action.

Therefore, we affirm the judgment of the trial court in entering judgment for plaintiffs in the amount of $24,792.88 together with interest from the date of settlement, but reverse the trial court's award of $5,000.00 in attorneys' fees for the declaratory judgment action.

Affirmed in part. Reversed in part.

DOWD, P.J., and CRIST, J., concur.