**CONTINENTAL CASUALTY CO., and Federal Insurance Co., Appellants,**

v.

**The MEDICAL PROTECTIVE CO., Respondent.**

**No. 62315.**

Missouri Court of Appeals, Eastern District, Division Four.

June 29, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1993.

Application to Transfer Denied Sept. 28, 1993.

David T. Butsch, Bryan M. Groh, St. Louis, for appellants.

Ben Ely, Jr., Cheryl A. Callis, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

Plaintiffs, Continental Casualty Company (Continental) and Federal Insurance Company, (Federal) appeal from a declaratory judgment entered in St. Louis County Circuit Court. Plaintiffs sought a declaration regarding the apportionment of a $90,000 settlement among three successive insurers for the repeated acts of negligence by the insured, Dr. Winter, over the course of twenty years. The trial court using a pro rata method of apportionment based on policy limits found plaintiff Continental liable for two-sixths of the settlement, plaintiff Federal liable for three-sixths of the settlement and Defendant Medical Protective liable for one-sixth of the settlement.

All three insurers issued policies during the course of Dr. Winter's treatment of Ms. Hanschmidt. At no time did their insurance coverage overlap. Plaintiff Continental insured Dr. Winter for two periods; April 1, 1984 to April 1, 1985 and April 1, 1985 to April 1, 1986. Each policy had an annual liability limit of $1,000,000 for a $2,000,000 total. Plaintiff Federal insured Dr. Winter for three periods; February 1, 1981 to February 1, 1982; February 1, 1982 to February 1, 1983; and February 1, 1983 to February 1, 1984. All three policies had annual liability limits of $1,000,000 for a $3,000,000 total. Defendant Medical Protective issued annual policies beginning in 1965 and ending in 1981. The liability limits of Medical Protective's policies varied from a low of $10,000 to a high of $200,000 per policy, aggregating a total of $1,000,000.

The apportionment issue was submitted to the trial court on April 1, 1992. The parties stipulated to the facts. Dr. Winter, a dentist, treated Alice Hanschmidt on approximately 48 occasions from October of 1965 through June of 1985. Ms. Hanschmidt filed a professional malpractice suit against Dr. Winter alleging that he

failed to exercise ordinary skill and care throughout the course of her treatment. She further alleged that he failed to properly diagnose and treat her progressive gingivitis and periodontal disease and that as a result she lost twenty-one natural teeth and suffered other damages.

Plaintiff Continental undertook defense of the suit and eventually settled with Ms. Hanschmidt for $90,000. Plaintiff Continental incurred $11,237 in defense costs. All parties agree that the fees and settlement were fair and reasonable.

The trial court, focusing on the "other insurance" clauses contained in the policies of all three companies, ordered a pro rata allocation of the loss based upon the total of policy limit exposure of each company.

The total of all policy liability limits applicable to the loss is $6,000,000. Plaintiff Continental's liability limits were $2,000,000 or two-sixths of the total liability. It was held responsible for $30,000 or two-sixths of the $90,000 settlement. Plaintiff Federal's liability limits were $3,000,000 or three-sixths of the total liability and it was held responsible for $45,000 or three-sixths of the $90,000 settlement. Lastly, defendant Medical Protective's liability limits totalled $1,000,000 and it was held responsible for $15,000 or one-sixth of the total settlement.

■ The standard of review for a court tried case is well known. The trial court's decision will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The provisions of liability insurance policies pertaining to the effect of other or additional liability insurance coverage for the same loss relate to concurrent coverages of a single occurrence. *See, Arditi v. Massachusetts Bonding and Insurance Company*, 315 S.W.2d 736 (Mo.1958); *Crown Center v. Occidental Fire & Casualty Company*, 716 S.W.2d 348, 361 (Mo. App.1986). These policy provisions have no application to a loss resulting from series of occurrences over a period of time involving consecutive rather than concurrent insurance coverage. Under the facts of this case, the trial court erroneously applied the law.

The original point of embarkation upon the determination of insurance coverage questions must always be the insuring clause of the policy. What does the insurer promise to do in consideration of the insured's payment of a premium? Paraphrasing the insuring clauses of the policies issued by the parties to this action, each company agreed to pay on behalf of Dr. Winter all sums he shall become legally liable to pay as damages because of the rendering or failure to render professional services *during the term of each policy*. None of the companies agreed to pay damages for injuries resulting from acts or omissions which occurred before the inception of coverage or after the termination of coverage. Yet, that is what each of the companies would be forced to do under the trial court's order.

Defendant Medical Protective urges us to adopt the reasoning of *Gulf Insurance Company v. Continental Casualty Company*, 464 So.2d 207 (Fla.App.1985). *Gulf* involved a claim of legal malpractice occurring over a period of two years during which the attorney was insured by successive insurers. A Florida court rejected a contention that the basis for allocating liability should be the number of days each company's policy was in effect during the two-year period. The court stated this "theory of coverage on a per diem basis is not supported by the language of the applicable insurance policies." *Id.* at 209. We respectfully disagree. Each of the policies provided malpractice coverage for specified periods of time. Contrary to the conclusion of the *Gulf* court, the term of coverage specified in each policy constitutes the policy language which supports the per diem theory of allocating liability between successive insurers. The "rewriting" of insurance contracts, decried by the Florida court, *Id.* at 209, occurred when the court ignored these time periods specified in the

policies and applied the doctrine of proration based upon policy limits, a procedure utilized in allocating liability among concurrent insurers.

We have been cited to and our independent research has disclosed no decision which has adopted the approach taken by the Florida Appellate Court in *Gulf.* Proration of liability among insurers based upon policy limits is expressly provided for in most insurance policies, including all three policies at issue here. Where a single loss resulting from conduct simultaneously insured by more than one insurer is involved, application of such proration clauses is logical. Each insurer has been paid a premium to cover the same loss resulting from the same conduct. Each insurer is responsible for the entirety of the loss up to the respective policy limits, and therefore, those limits may be properly used as a means of apportioning the loss fairly. However, in the case of single loss resulting from conduct successively insured by more than one insurer, proration based upon policy limits becomes illogical and patently artificial. The risk to which each insurer is exposed and the premium it receives for its insurance are related more to the time of exposure than to the amount of coverage. The cost of purchasing insurance does not increase proportionately to the policy limit. *Crown Center v. Occidental Fire & Casualty Co.,* 716 S.W.2d at 363. The principal factor in establishing the cost of insurance is the time period of minimum coverage with additional amounts being relatively inexpensive by comparison. *Reliance Insurance Company v. St. Paul Surplus Lines Insurance Company,* 753 F.2d 1288, 1291 (4th Cir.1985). Recognition of this well-known fact serves to illustrate the unfairness of the *Gulf* decision which ignores the length of exposure to liability and considers consecutive coverages the same as concurrent coverages.

■ Where the loss is caused not by a single event but by a series of cumulative acts or omissions, we believe the fair method of apportioning the loss among consecutive insurers is by application of the "exposure theory" utilized in cases of progressive disease such as asbestosis. *See, Insurance Company of North America v. 48 Insulations, Inc.,* 633 F.2d 1212 (6th Cir. 1980). Recognizing that words such as "bodily injury" and "occurrence" as used in typical insurance policies covering an accident or common disease, become inherently ambiguous when applied to a cumulative, progressive disease, the court held that proration of the loss among consecutive insurers should be based upon the period each was exposed to potential liability. *Id.* at 1222.

■ The parties have stipulated that the cause of Ms. Hanschmidt's tooth loss was the failure to diagnose and treat progressive gingivitis and periodontal disease throughout the entire course of Dr. Winter's treatment. We perceive this to be analogous to the buildup of scar tissue in the lungs over a period of years. It is alleged that Ms. Hanschmidt was under the care and treatment of Dr. Winter from October 25, 1965 until June 11, 1985. On the basis of this allegation Dr. Winter was subject to liability for damages for a period of 7,169 days. Defendant Medical Protective was exposed to liability as the insurer of Dr. Winter for 5,577 days, 78 percent of the total; plaintiff Federal Insurance Company for 1,155 days, 16 percent of the total and plaintiff, Continental Casualty Company for 437 days, 6 percent of the total. The premiums for insurance protection paid by Dr. Winter to the three insurance companies were based primarily upon these periods of time. Therefore, proration among the three companies on the basis of the proportionate period of each company's exposure is the fairest method of apportioning the settlement.

We are not unmindful of the provision in the policy of defendant Medical Protective that all injury resulting from a series of acts or omissions in rendering professional services to one person shall be considered as arising from one occurrence. This provision is part of a paragraph in the insurance policy which limits the company's liability for damages during any one policy year to the stated amount of the policy limits for any one occurrence. The purpose of such a clause is to prevent stacking of policy limits based upon the number of acts of negligence which contribute to a single injury. *See,* Robert E. Keeton, *Insurance*

Law; Basic Text, 84, West Publishing Co. (1971). In *Zipkin v. Freeman*, 436 S.W.2d 753 (Mo. banc 1968), the Missouri Supreme Court upheld the validity of a similar limitation. *Zipkin* involved a physician found guilty of negligent treatment of a patient over a three-year period while covered by three insurance policies, each with a $5,000 limit of liability, issued by the same company. Because of policy language identical to that in the Medical Protective policy in this case, the court held the insurer could not be liable for more than $5,000. The court reasoned that the damages resulting from a continuing tort constitute a single claim which may not be split into separate actions seeking piece-meal recovery. *Id.* at 764. We have no disagreement with this concept, but we fail to see how it helps defendant Medical Protective. Dr. Winter purchased insurance from Medical Protective each year from 1974 to 1981 with a single occurrence policy limit in excess of the total settlement with Ms. Hanschmidt. Therefore, even if defendant Medical Protective were found to be liable for the entire settlement, its policy limit would not be exceeded.

■ The parties have stipulated that the sum of $11,237.63 expended by plaintiff Continental Casualty Company is a reasonable cost of defense. Cost of defense is an inevitable concomitant of a claim for damages. Therefore, it is appropriate to apportion the cost of defense on the same basis as the apportionment of the settlement of the claim for damages.

Accordingly, we exercise our authority under Rule 84.14 to finally dispose of the case and to enter such judgment as the court ought to give. It is hereby ordered and decreed as follows:

A. Defendant Medical Protective Company is liable for 78 percent of the $90,-000 settlement or $70,200 and 78 percent of the cost of defense, or $8,765.35.

B. Plaintiff Federal Insurance Company is liable for 16 percent of the $90,000 settlement or $14,400 and 16 percent of the cost of defense or $1,798.02.

C. Plaintiff Continental Casualty Company is liable for 6 percent of the $90,000 settlement or $5,400 and 6 percent of the cost of defense, or $674.26.

Judgment is hereby entered in favor of plaintiff Continental Casualty Company and against defendant Medical Protective Company in the sum of $78,965.35 plus interest from the date of settlement at the rate of 9 percent per annum.

Judgment is hereby entered in favor of Continental Casualty Company and against defendant Federal Insurance Company in the sum of $16,198.02 plus interest from the date of settlement at the rate of 9 percent per annum.

Costs of appeal are assessed one-third against defendant Medical Protective Company, one-third against plaintiff Federal Insurance Company and one-third against plaintiff Continental Casualty Company.

CRANE and CRAHAN, JJ., concur.