MONSANTO COMPANY, a corporation of the State of Delaware, Plaintiff Below, Appellant,

v.

C.E. HEATH COMPENSATION AND LIABILITY INSURANCE COMPANY; Allstate Insurance Company; American Manufacturers Mutual Insurance Company; and Liberty Mutual Insurance Company, Defendants Below, Appellees.

No. 160, 1994.

Supreme Court of Delaware.

Submitted Oct. 13, 1994.
Decided Nov. 7, 1994.
On Denial of Reargument and
Rehearing en Banc Jan. 10, 1995.

---

Charles S. Crompton, Jr., Richard L. Horwitz and Peter J. Walsh, Jr. of Potter, Anderson & Corroon, Wilmington, Jerold Oshinsky (argued), and Michael A. Nardolilli of Anderson, Kill, Olick & Oshinsky, John M. Bray and David J. Curtin of Schwalb, Donnenfeld, Bray & Silbert, Washington, DC, for appellant Monsanto Co.

Henry E. Gallagher, Jr. and John C. Kairis of Connolly, Bove, Lodge & Hutz, Wilmington, James A.A. Pabarue (argued), James W. Christie, Stella M. Tsai and Susan K. Keyack of Christie, Pabarue, Mortensen & Young, Philadelphia, PA, for appellee C.E. Heath Compensation and Liability Ins. Co.

Robert J. Katzenstein of Smith, Katzenstein & Furlow, Wilmington, Philip J. McGuire of Gleason, McGuire & Shreffler, Chicago, IL, for appellee Allstate Ins. Co.

Robert K. Beste, Jr. of Biggs & Battaglia, Wilmington, for appellee American Mfrs. Mut. Ins. Co.

Lawrence S. Drexler of Elzufon, Austin & Drexler, Wilmington, Joseph G. Manta and Stephen F. Brock of Manta and Welge, Philadelphia, PA, for appellee Liberty Mut. Ins. Co.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

HOLLAND, Justice:

This is an interlocutory appeal from a declaratory judgment action in the Superior Court. The plaintiff-appellant, Monsanto Company ("Monsanto"), seeks a declaration of judgment that it has coverage from several insurers for claims relating to pollution at various sites throughout the United States. Pursuant to a Superior Court order on October 29, 1991, the "law of the case" in this proceeding is that those coverage issues will be resolved under the law of Missouri.

In an opinion dated April 15, 1994, the Superior Court projected that the Missouri Supreme Court would allocate liability in the present controversy on a *pro rata* basis among Monsanto's respective insurers, including the defendants-appellees, C.E. Heath Compensation and Liability Insurance Company ("C.E. Heath"), Allstate Insurance Company, American Manufacturers Mutual Insurance Company and Liberty Mutual Insurance Company. More specifically, the Superior Court held that, pursuant to the law of Missouri, when bodily injury or property damage occurs across multiple policy periods, liability among Monsanto's respective insurers' policies is apportioned *pro rata* based on the length of coverage. The Superior Court included Monsanto in the *pro rata* apportionment for periods during which it had little or no insurance.

Monsanto argues on appeal that the Superior Court's opinion resulted in an unintended forfeiture of insurance coverage, is at variance with the majority rule nationally, and is contrary to basic principles of Missouri law.[1] This Court has concluded that

---

1. According to Monsanto, under the majority rule of joint and several liability, each insurance company whose policy coverage is applicable must pay "all sums" to the policy holder and, thereafter, seek contribution from the other insurance companies. *See* note 6 *infra*.

Monsanto's arguments are persuasive. Therefore, the "allocation of coverage" judgment of the Superior Court is reversed.

### Procedural History

Monsanto filed a motion for partial summary judgment in the Superior Court. Monsanto sought a determination that a "continuous" trigger of coverage should apply to determine which insurance policies provide coverage for the pollution claims pending against Monsanto. According to Monsanto, each insurer that issued an insurance policy which was in effect for any portion of time from the point at which the pollution process at a particular site began until the point at which pollution was discovered would have its coverage triggered.

C.E. Heath filed two motions for partial summary judgment which related to the issue raised by Monsanto. One motion sought a determination that the ESLIC [2] policies are not triggered throughout the pollution process but are triggered only upon "manifestation" of injury or damage. The other motion filed by C.E. Heath, which is the only motion that relates to this appeal, sought a declaration that liability should be allocated on a *pro rata* basis among those carriers whose policies are triggered by the same injury or damage.[3]

The Superior Court decided Monsanto's and C.E. Heath's motions in one opinion and order entered on April 15, 1994. It denied both Monsanto's and C.E. Heath's motions with respect to the trigger of coverage issue, finding that the undisputed facts relating to

this issue were insufficient to permit the grant of partial summary judgment to any party.[4] Using the same rationale, the Superior Court also denied C.E. Heath's motion for partial summary judgment on the allocation issues.

Nevertheless, the Superior Court did make several legal determinations with respect to those issues under Missouri law, premised on a subsequent determination by the finder of fact that the bodily injury or property damage for which Monsanto seeks coverage spans multiple policy periods. First, the Superior Court held that, under the language of the CGL policies at issue, it is the resulting injury or damage, not the negligent act that causes it, that triggers coverage. Second, the Superior Court held that, to determine when bodily injury or property damage is deemed to have "occurred" for the purposes of the policies at issue, an injury-in-fact (for bodily injury) or damage-in-fact (for property damage) trigger of coverage theory is to be applied. Third, the Superior Court held that if, in applying the injury-in-fact or damage-in-fact standard, multiple policy periods are triggered for the same claim of injury or damage, liability among the respective insurers is to be apportioned on a *pro rata* basis.

Monsanto filed a timely application in the Superior Court for permission to take an interlocutory appeal to this Court solely from the portion of the Superior Court's order concerning *pro rata* allocation of liability. That application was granted by the Superior Court on May 9, 1994. This Court granted certification on May 18, 1994.

---

**2.** C.E. Heath Compensation and Liability Insurance Company acquired certain interests of a company called Falcon Insurance Company ("Falcon") by sale on or about July 15, 1986. Before January 1, 1981, Falcon was known as Commercial Union Surplus Lines Insurance Company and earlier as Employers' Surplus Lines Insurance Company ("ESLIC"). ESLIC was originally one of the Commercial Union Insurance Companies ("Commercial Union"). Commercial Union retained certain pre-sale liabilities of Falcon for purposes of handling claims made under policies issued before the sale.

**3.** This issue arises only where there is a possibility that more than one policy may be triggered by a claim or loss. Monsanto's proposed "continuous" trigger of coverage would present such an

issue because, under Monsanto's theory, injury or damage "results" over a *period* of time rather than at a single *point* in time.

**4.** The Superior Court determined that for both bodily injury and property damage claims, insufficient facts had been substantiated on the record to indicate when each injury-in-fact or damage-in-fact occurred, which policy period(s) of coverage is (are) at issue, and thus what proportion of liability each insurer should bear if injury or damage spans multiple periods. Consequently, the Superior Court limited its ruling to a declaration that proration based on each insurer's policy periods would apply if it is subsequently determined in the proceedings that policies spanning multiple time periods have been triggered by the underlying claims against Monsanto.

### Insurance Policy Language

C.E. Heath's predecessor, ESLIC, issued excess liability policies to Monsanto for the periods from 1959 to 1965 and from 1967 to 1972. The relevant insuring agreement language is as follows:

> Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for *all sums* which the Assured shall be obligated to pay ... for damages, direct or consequential and the expenses, all as more fully defined by the term "ultimate net loss" on account of ... Property Damage ... caused by or arising out of each occurrence. (emphasis added).

In addition, the policies define "occurrence" as:

> An accident or happening or event or continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability *during the policy period.* (emphasis added).

The Superior Court concluded that the phrase "during the policy period" triggers liability under each policy. In addition, the Superior Court concluded that the phrase "during the policy period" contained in the definition of "occurrence" also served to "limit" the "all sums" language.

Monsanto argues that such an interpretation, which assigns a dual purpose to the phrase "during the policy period," makes the "all sums" language superfluous. According to Monsanto, the Superior Court confused the predicate for coverage—damages or injury during the policy period—with an insurance company's responsibility to pay "all sums" once the coverage in a particular insurance policy has been activated.

C.E. Heath argues that, reading the insuring agreement together with the definition of "occurrence," it follows that only injury or damage which occurs during the policy period triggers liability under the ESLIC policies. Therefore, according to C.E. Heath, where an injury is found to be "continuous" in nature and to occur in each of several different policy periods, it is "logical" to prorate costs by policy period. Otherwise, C.E.

Heath submits that insurers will be paying "all sums" for injury or damage that occurs during policy periods other than their own. C.E. Heath's arguments are joined in by the other insurance carriers in this appeal.

### Missouri Contract Construction Law

Missouri courts construe insurance policies in accordance with the same principles of construction that apply to all contracts. *See, e.g., Peters v. Employers Mut. Cas. Co.*, Mo. Supr., 853 S.W.2d 300, 302 (1993) (*en banc* ). Missouri courts give effect to the intent of contracting parties. That intent is discerned from the contract language. *General American Life Ins. Co. v. Barrett*, Mo.Ct.App., 847 S.W.2d 125, 132 (1993). If "insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." *Krombach v. Mayflower Ins. Co.*, Mo.Supr., 827 S.W.2d 208, 210 (1992) (*en Banc* ).

### Pro Rata Clause
### An Exclusion Under Missouri Law

■ Missouri law provides that exclusions and limitations on coverage cannot be read into a policy:

> The courts should not read into a policy a ground of avoidance of liability that is not clearly expressed therein, and doubts and uncertainties in the language used should be resolved in favor of the insured.

*Greer v. Zurich Ins. Co.*, Mo.Supr., 441 S.W.2d 15, 34 (1969) (*citing Aetna Casualty & Sur. Co. v. Haas*, Mo.Supr., 422 S.W.2d 316, 321 (1968)).

■ Missouri courts have defined a *"pro rata* clause" as follows:

> Generally, a pro rata clause provides the insurer will pay its pro rata share of the loss, usually in proportion which the limits of its policy bears to the aggregate limits of all valid and collectible insurance.

*Hartford Accident & Indem. Co. v. Western Casualty & Sur. Co.*, Mo.Ct.App. 712 S.W.2d 722, 724 n. 2 (1986) (*citing State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, Mo.Ct.App., 594 S.W.2d 950, 953 (1980) and 16 G. Couch et al., *Couch on*

Insurance 2d § 62.2 (rev. ed. 1983)). The function of a *pro rata* limitation is not to endow coverage, but to limit the obligation of the indemnity. *Harold S. Schwartz & Assocs., Inc. v. Continental Casualty Co.*, Mo.Ct.App., 705 S.W.2d 494, 498 (1985). Accordingly, a *pro rata* limitation on coverage is a policy *exclusion* under Missouri law. *See Id.*

## Plain and Unequivocal Missouri Exclusion Requirement

To determine whether an insurance policy included the specific language necessary to limit its coverage obligations, the Missouri Supreme Court has examined the policy language at issue. *See, e.g., Krombach v. Mayflower Ins. Co.*, Mo.Supr., 827 S.W.2d 208, 211 (1992). In *Krombach*, the insurance company argued that any amount paid by a tortfeasor or another insurer would reduce the insurance company's limits of liability pursuant to the policy's "amount payable" clause. In rejecting this argument, the Missouri Supreme Court noted the insurance company's failure to state the restriction on coverage in "plain and unequivocal terms":

> Had [the insurance company] intended to reduce the coverage limits by any amount paid by a tortfeasor or his insurer, [the insurance company] could have so stated in plain and unequivocal terms. For example, see the language of the policy in *Rodriguez* where the policy plainly stated "[t]he limit of liability [previously defined] shall be reduced by all sums paid by or on behalf of" the tortfeasor.

*Krombach v. Mayflower Ins. Co.*, 827 S.W.2d at 211 (citing *Rodriguez v. General Accident Ins. Co.*, Mo.Supr., 808 S.W.2d 379, 381 (1991) (*en banc*)). The Missouri Supreme Court concluded that "[h]aving failed to make clear which 'amount payable' was intended, the insurer must bear the burden of the resulting confusion." *Id.*

## Pro Rata Provisions Missouri's Jurisprudence

Missouri courts have recognized that insurance companies may effectively limit their coverage obligations with an explicit *pro rata* provision in the terms of the policy. *See Harold S. Schwartz & Assocs., Inc. v. Continental Casualty Co.*, Mo.Ct.App., 705 S.W.2d 494 (1985). In *Schwartz*, the policy contained express *pro rata* language.

> [T]he limit of liability under this policy ... shall be limited to the proportion of the total loss and expense which the number of utterances or disseminations during the period of this policy bears to the total number of all utterances or disseminations.

*Id.* at 496. Conversely, the Missouri Court of Appeals has held that where a policy is *silent* on proration, the insurance company is jointly and severally liable to the full extent of the policyholder's loss (i.e., "all sums"). *Tinsley v. Aetna Ins. Co.*, 199 Mo.App. 693, 205 S.W. 78 (1918). In *Tinsley*, Aetna provided $10,000 of coverage on a vessel through four separate policies. In addition, the policyholder purchased coverage from another insurer to bring the total insurance on the vessel to approximately $15,000. After the policyholder brought an action to recover on one of the Aetna policies with a limit of $1,000, the insurance company argued that the policyholder "was not in any event entitled to recover more than one-fifteenth of the amount of the loss." The Missouri Court of Appeals rejected the insurance company's attempt to rewrite the policy and upheld a jury verdict for almost the full policy limit:

> But the policy sued upon contains no "pro rata clause." And *in the absence of a provision in the policy to the contrary, it is held the insured may recover the full amount of his loss from any insurer, leaving the latter to seek contribution.*

*Tinsley v. Aetna Ins. Co.*, 199 Mo.App. 693, 205 S.W. at 81 (emphasis added).

## This Case

■ The ESLIC policy provides that it will indemnify "the Assured," Monsanto, for all sums which Monsanto becomes obligated to pay for particular types of harm, such as bodily injury or property damage, that is caused by an "occurrence." An "occurrence," in turn, is defined as an "accident," "happening" or "event" that results in unexpected and unintended injury or damage during the policy period.

A policy is activated by bodily injury or property damage that takes place "during

the policy period." The triggering language in the Monsanto insurance policies does not define the extent of coverage. Once a policy is on the risk, the unambiguous policy language requires the insurance company to pay "all sums" for which the policyholder shall become liable, up to the policy limits. That language defines ESLIC's duty under its policies as the obligation to pay "all sums" for which Monsanto becomes liable—not a proportionate share.[5]

The majority of courts have held that without a *pro rata* clause in the policies, the insurance companies cannot limit their obligations to a *pro rata* share or portion of Monsanto's liabilities.[6] *See Tinsley v. Aetna Ins. Co.*, 199 Mo.App. 693, 205 S.W. 78, 81 (1918).[7] This Court's examination of the present status of the law in Missouri leads us to conclude that the Missouri Supreme Court would follow the majority rule and not read a *pro rata* allocation of coverage into Monsanto's insurance policies. Consequently, if ESLIC (C.E. Heath) intended to reduce the limits of its coverage to the "portion [of the

loss] which results in the relevant policy period," Missouri law required it to state that *pro rata* liability in "plain and unequivocal terms." *See Krombach v. Mayflower Ins. Co.*, 827 S.W.2d at 211. We also note, however, that under current Missouri law, an insurance company that completely honors the policyholder's claim may then recover contribution through an apportionment action against the other insurance companies. *Continental Casualty Co. v. Medical Protective Co.*, Mo.Ct.App., 859 S.W.2d 789 (1993).[8]

## Conclusion

The judgment of the Superior Court, which determined that Monsanto's insurance coverage would be allocated on a *pro rata* basis among the applicable policies, is REVERSED. This matter is remanded for further proceedings in accordance with this opinion.

Before VEASEY, C.J., HOLLAND, HARTNETT, and BERGER, JJ. (constituting the Court *en Banc*).

---

**5.** The Missouri Supreme Court has held that: the word "all" is sometimes said to be the most comprehensive in the English language; it denotes the "whole number of," "each" and "every."
*Baker v. Estate of Brown*, 365 Mo. 1159, 294 S.W.2d 22, 25 (1956).

**6.** The majority rule follows tort principles in holding insurers liable jointly and severally rather than on a *pro rata* basis. *AC and S Inc. v. Aetna Casualty & Sur. Co.*, 764 F.2d 968, 974 (3d Cir.1985); *Keene Corp. v. Insurance Co. of N. Am.*, 667 F.2d 1034, 1049–50 (D.C.Cir.1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982); *New Castle County v. Continental Casualty Co.*, 725 F.Supp. 800, 817 (D.Del.1989), *rev'd on other grounds sub nom., New Castle County v. Hartford Accident & Indemnity Co.*, 933 F.2d 1162 (3d Cir.1991), *cert. denied*, — U.S. ——, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993); *Federal Ins. Co. v. Susquehanna Broadcasting Co.*, 727 F.Supp. 169, 175 (M.D.Pa.), *aff'd*, 928 F.2d 1131 (3d Cir.1989), *cert. denied*, 502 U.S. 823, 112 S.Ct. 86, 116 L.Ed.2d 58 (1991); *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 112 Ill.Dec. 684, 699, 514 N.E.2d 150, 165 (1987); *J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502, 508 (1993).
*See also, e.g., Royal Globe Ins. Co. v. Industrial Accident Comm'n*, 63 Cal.2d 60, 45 Cal.Rptr. 1, 4, 403 P.2d 129, 132 (1965) (*en banc*); *Kuhn v. Grant County*, 201 Kan. 163, 439 P.2d 155, 162

(1968); *Gruol Constr. Co. v. Insurance Co. of N. Am.*, 11 Wash.App. 632, 524 P.2d 427, 431 (1974).

**7.** Without an express proportional limitation in the policy, an insurance company is responsible for the entire loss up to its limits of liability, but the policyholder is limited to a single recovery for that loss:

> But where there is no provision in a policy of insurance providing for prorating if other insurance exists upon the same subject matter, a company against whom suit is brought after loss cannot insist upon prorating the loss with other companies thereon, even though the insured may be limited to the recovery of a single indemnity.
> 6 John A. & Jean Appleman, *Insurance Law & Practice* § 3905, at 436–37 (rev. ed. 1972; Supp. 1993) (citing *Tinsley* ).

**8.** In *Medical Protective*, an insurance company, after honoring a policyholder's claim in full, brought an apportionment action seeking a declaration regarding the apportionment of the loss as among the three insurers. *Id.* at 790. The Missouri Court of Appeals prorated the policyholder's loss among the three insurance companies as the "fairest method" of apportionment. *Id.* at 792. That inter-insurer apportionment, of course, had no bearing upon the insurers' obligations to their policyholder who had already been made whole.

This 10th day of January, 1995, the Court has before it various Motions for Clarification, Reargument, and Rehearing *en Banc.* In essence, these motions assert that the Court, in denying *pro rata* allocation of insurance, suggested that liability would be allocated jointly and severally. This assertion is not correct. This Court held that Monsanto's insurance coverage in this matter would *not* be allocated on a pro rata basis among the applicable policies. The determination of how Monsanto's insurance coverage would otherwise be allocated, has not been decided by this Court, and will be determined by the Superior Court as it proceeds in accordance with this Court's opinion. The motions for Reargument and Rehearing *en Banc,* are DENIED. The mandate shall issue forthwith.