**GALEN HEALTH CARE, INC., et al., Plaintiffs,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Defendant.**

**No. 94–795–CIV–ORL–22.**

United States District Court, M.D. Florida, Orlando Division.

Jan. 25, 1996.

Kenneth A. Beytin, Foley & Lardner, Tampa, FL, Michael D. Hultquist, McCullough, Campbell & Lane, Chicago, IL, for Plaintiffs.

Jennings L. Hurt, III, Richard B. Mangan, Jr., Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, FL, for Defendant.

### ORDER

CONWAY, District Judge.

This cause comes before the Court for consideration of the parties' opposing Motions for Summary Judgment and Plaintiffs' Motion in Limine.

### I. BACKGROUND

Plaintiffs, Galen Healthcare, Inc., Galen of Florida (d/b/a Lucerne Medical Center), and Anglo American Insurance Company Ltd. seek reimbursement,[1] as an excess insurer, from American Casualty of Reading, Pennsylvania (ACCR), the alleged primary insurer, for a payment they made in settlement of a medical malpractice claim. On December 6, 1990, Alan Boone filed a medical malpractice suit for neurological injuries he sustained after undergoing surgery at Lucerne Medical Center on December 27, 1988. The named defendants in the *Boone* suit were Lucerne Medical Center, Dr. David Rosen, Dr. Rosen's professional association, and Nurse Lason. The *Boone* case settled for $6.6 million

---

1. Plaintiffs seek declaratory relief and money damages under the theory of equitable subroga-tion. Doc. 32, ¶ 1.

in July 1993. The Plaintiffs allege that $4.6 million was contributed to obtain a release for Lucerne Medical Center and Nurse Lason, with Dr. Rosen's insurance carrier contributing the remaining $2 million.

Resolution of the issues raised by the summary judgment motions turns on the interpretation and application of the policies issued by the respective companies. According to copies of insurance policies provided to the Court as exhibits [2], Plaintiff Galen Healthcare, Inc. had primary insurance coverage with Health Care Indemnity, Inc. (HCII) covering the professional malpractice liability of the Lucerne Medical Center and Nurse Lason; HCII paid $2.5 million, the limits of its coverage, to settle the *Boone* claim. Nurse Lason was also covered under a professional nurses liability policy, issued by ACCR, providing $1 million in coverage. Galen Healthcare, Inc. also maintained a true excess policy with limits of $2.5 million for each occurrence in excess of HCII's underlying $2.5 million limit.[3] Plaintiffs allege that ACCR's $1 million policy covering Nurse Lason provided primary coverage which should have responded to the *Boone* malpractice action before its true excess policy.

## A. Standard for Summary Judgment

Plaintiffs seek partial summary judgment on the issue of whether ACCR's policy is a primary policy, which must cover the loss for Nurse Lason before Plaintiffs' true excess policy is require to indemnify the loss. ACCR moves for summary judgment on several bases; the crux of its motion is that Plaintiffs have failed to state a claim under the doctrine of equitable subrogation or Florida's statute governing bad faith failure to settle. Summary judgment is only granted where there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The court must view the evidence and all factual inferences arising

therefrom in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–9, 90 S.Ct. 1598, 1608–9, 26 L.Ed.2d 142 (1970). Summary judgment is inappropriate where there are material factual issues in dispute or the movant fails to "furnish an adequate basis for the court to apply the proper legal principles in resolving a difficult question of law." *Bingham, Ltd. v. United States of America*, 724 F.2d 921, 924 (11th Cir.1984). The interpretation of language in an insurance policy is a question of law properly decided on summary judgment. *Cranford Ins. Co. v. Allwest Ins. Co.*, 645 F.Supp. 1440, 1441 (N.D.Cal.1986) (citing *Continental Casualty Co. v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir. 1985)).

## B. ACCR is a Primary Insurer

Plaintiffs argue that ACCR's policy is primary, not excess, and Plaintiffs are entitled to indemnity from ACCR for settlement of claims against Nurse Lason under the law of equitable subrogation. ACCR contends that Plaintiffs' policy and ACCR's policy were both excess policies, and that Plaintiffs have no right to any reimbursement. "Florida law is quite clear that the parties' intent is to be measured solely by the language of the policies unless the *language* is ambiguous." *Towne Realty v. Safeco Ins. Co. of America*, 854 F.2d 1264, 1267 (11th Cir.1988) (citing *Durham Tropical Land Corp. v. Sun Garden Sales Co.*, 106 Fla. 429, 138 So. 21, 23 (1931)). In this case, the language of the policies is clear and unambiguous, and Florida case law dictates the priority of coverage.

Plaintiffs' policy states in four separate places that their coverage is in excess of "the Underlying Amounts" of other insurance: [4]

1) "This is a claims made policy with legal costs and expenses inclusive within the 'Limit of Liability' ... and is excess of Underlying Amounts (as set forth in the attached schedule of underlying amounts), which provide for legal costs and expenses

---

**2.** Complaint, Exh. A, B, C.

**3.** The excess policy was self-insured by Galen for 30% of the limit and 70% by outside insurers, Anglo American Insurance Company Ltd. (45%) and Walbrook Insurance Company (55%). Wal-

brook is alleged to be in receivership and is not a party to this action.

**4.** Doc. 1, Exh. B.

to be paid in addition to the amounts specified." (Excess Liability Policy, p. 1);

2) "This extension of coverage shall apply in excess of the Underlying Amounts for Hospital Professional Liability." (Hospital Professional Liability Endorsement, p. 1, ¶ I.A.);

3) "Underwriters shall only be liable in excess of the amounts as stated in the attached Schedule of Underlying Amounts...." (Excess Liability Policy, p. 2, ¶ 2 of Insuring Agreements);

4) "Liability under this Policy ... shall not attach unless and until the Underlying Amounts have been satisfied by actual payment of such Loss ..." (Excess Liability Policy, p. 13, ¶ H).

Plaintiffs' policy makes clear that it is a true excess policy, that is, it extends only excess coverage above the "Underlying Amounts." *Cf. Towne Realty*, 854 F.2d at 1268 (interpreting language of policy with excess coverage). According to the policy's Schedule of Underlying Amounts, Plaintiffs' policy attached only to excess of $2.5 million.[5]

■ ACCR contends that the "other insurance" clause in its policy insuring Nurse Lason presumptively makes its policy an "excess policy". The "other insurance" clause in the Professional Liability section reads:

OTHER INSURANCE

If there is other insurance which applies to the loss resulting from **your professional services,** the other insurance must pay first. It is the intent of this policy to apply to the amount of loss which is more than:

A. the limits of liability of the other insurance; and

B. the total of all deductibles and self-insured amounts under all such other insurance.

■ We will not pay more than our limit of liability.[6]

5. *See* Schedule of Underlying Amounts attached to Doc. 1, Exh. B, Excess Liability Policy, p. 21.

6. Doc. 1, Exh. C.

7. HCII's "other insurance clause reads as follows:

Other Insurance. If other collectible insurance with any other insurer is available to the

However, the "Coverage Agreements" in the Liability Coverage section contains no limitation for "excess" coverage and, in contrast, obligates the insurer to pay "all amounts up to the limit of liability":

COVERAGE AGREEMENTS

We will pay all amounts up to the limit of liability, which you become legally obligated to pay as a result of **injury** or **damage** to which this insurance applies. The **injury** or **damage** must be caused by a **medical incident** arising out of **professional services** by **you**....

We have the right to and will defend any claim. We will:

A. do this even if any of the charges of the claim are groundless, false or fraudulent;

B. investigate and settle any claim as we feel appropriate;

Our payment of the limit of liability ends our duty to defend or settle. We have no duty to defend any **claim** not covered by this policy.

The language of the "Coverage Agreement" requires ACCR to defend and indemnify Nurse Lason. Courts have interpreted this duty to defend to be consonant with a primary policy. *See Trizec Properties v. Biltmore Construction Co.*, 767 F.2d 810 (11th Cir.1985). Under Florida law all doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured and if the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered. *Id.* (citing 7C Appleman, Insurance Law & Practice 99–100 (Berdal ed. 1979)). ACCR has maintained throughout the action that HCII was a primary insurer based on the coverage agreement in HCII's policy. However, HCII's policy also contains an "other insurance" clause that mirrors ACCR's clause.[7]

Named Insured covering a loss covered hereunder (except insurance purchased to apply in excess of applicable limit of liability hereunder), the insurance hereunder shall be in excess of and shall not contribute with such other insurance regardless of the terms and conditions stated in any contract providing such other insurance." Doc. 1, Exh. A, p. 14, ¶ 6.

Despite the language of HCII's primary policy,[8] which parallels its own, ACCR asks this Court to construe its policy as an excess, rather than primary policy. ACCR cites no Florida case law on point, giving effect to the "other insurance" clause, when both primary policies contain them.

■ However, Florida law is quite clear: When two insurance policies contain "other insurance" clauses the clauses are deemed mutually repugnant and both insurers share the loss on a pro rata basis in accordance with their policy limits. *Travelers Ins. v. Lexington Ins.*, 478 So.2d 363, 365 (Fla. 5th DCA 1985), *rev. denied,* 488 So.2d 69 (1986). *See also Rouse v. Greyhound Rent–A–Car, Inc.* 506 F.2d 410, 415 (5th Cir.1975) (interpreting Florida law); *Motor Vehicle Casualty Co. v. Atlantic Nat'l Ins. Co.,* 374 F.2d 601, 603 (5th Cir.1967). Accordingly ACCR's and HCII's "other insurance" clauses cancel each other out and both insurers share the loss on a pro rated basis. *See Travelers,* 478 So.2d at 365. The policies in this case are not pro rated since the $6.6 million settlement exceeded the limits of the combined primary policy amounts: $2.5 million of HCII's coverage and $1 million of ACCR's coverage.

The Court must next determine ACCR's priority *vis a vis* the Plaintiffs'. In *Towne Realty,* the Eleventh Circuit clarified Florida law on the priority of a true excess policy as compared to policies containing "other insurance clauses." *Id.* at 1269. By applying the Florida Supreme Court's holding in *Allstate Insurance Co. v. Executive Car & Truck Leasing,* 494 So.2d 487, 489 (Fla.1986), the Eleventh Circuit determined that a "true" excess policy only takes effect after the exhaustion of all primary policies containing "other insurance" clauses. *Id.* at 1269. The

Court finds that Plaintiffs' policy is a true excess policy, while ACCR's and HCII's policies are primary policies containing "other insurance" clauses. Plaintiffs' liability for the malpractice settlement is only incurred after the first $5.5 million [9] is paid; Plaintiffs' liability for the settlement is $1.1 million, the difference between the settlement amount, $6.6 million, and the liability of the primary policies, $5.5 million. Plaintiffs' Motion for Partial Summary Judgment is GRANTED. ACCR's arguments in opposition to the motion, which the Court finds unavailing, are discussed separately below.

## C. ACCR and Plaintiffs' Policies Insured the Same Risk

■ ACCR contends that both ACCR and Plaintiffs must have insured the same insureds and the same risk for Plaintiffs to recover in equitable subrogation. Plaintiffs appropriately point out that ACCR has failed to cite any binding case law,[10] and Plaintiffs counter with case law that is binding to demonstrate that Florida does not require a rigorous test for equitable subrogation. *See, e.g., Kala Investments v. Sklar,* 538 So.2d 909, 917 (Fla. 3d DCA 1989), *rev. denied,* 551 So.2d 461 (1989). Even though Plaintiffs are not required to meet the test ACCR sets forth, they would be able to do so.

ACCR contends that the two policies covered two different insureds. ACCR claims that the Plaintiffs' policy covered only Galen (f/k/a Humana, Inc.) as the "Named Insured", while ACCR's policy covered only Pamela Lason as the "Named Insured". ACCR's reliance on the term "Named Insured" is misplaced because the party covered under the Plaintiffs' Excess Liability Policy is the "Insured", defined to include "any Employee of the Named Insured [Hu-

---

**8.** The HCII policy Coverage Agreement, Health Care Professional Liability section reads:

[T]he Company shall have the right and duty to defend any suit against the Insured seeking such damages even if any of the allegations of the suit are groundless, false, or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of the

judgments or settlements.... (Doc. 1, Exh. A, p. 2).

**9.** The $5.5 million is comprised of $2 million from Dr. Rosen's primary insurer; $2.5 million from HCII's primary policy; and $1 million from ACCR's primary policy.

**10.** ACCR cites *Great West Casualty Co. v. Canal Ins. Co.,* 901 F.2d 1525 (10th Cir.1990) and *Mission Nat'l Ins. Co. v. Hartford Fire Ins. Co.,* 702 F.Supp. 543 (E.D.Pa.1989) in support.

mana, Inc.] ... while acting within the scope of the Employee's duties."[11] ACCR has already admitted that Plaintiffs' policy covered Nurse Lason as an "Insured".[12] The two policies, ACCR's and Plaintiffs', both insured Nurse Lason for personal injuries to patients caused in the course of her employment. These policies insure the exact same risk of personal injury to medical patients caused by a nurse in the course of providing professional nursing services. ACCR and Plaintiffs insured the same party and the same risk. Because Lason was covered for professional liability claims under both policies, ACCR's primary policy was required to respond prior to Plaintiffs' excess policy.[13]

### D. Florida Law Recognizes Equitable Subrogation

■ ACCR contends that no subrogation cause of action is available to Plaintiffs and summary judgment should be granted to ACCR on this issue.[14] Florida law recognizes a cause of action for equitable subrogation between primary and excess insurers arising from the payment of a claim by the excess insurer. *See Ranger Ins. Co. v. Travelers Indemnity Co.,* 389 So.2d 272, 274–75 (Fla. 1st DCA 1980) (holding that excess insurer is subrogated to the insured's rights against a primary insurer for breach of the primary insurer's good-faith duty to settle). Without a doubt, Plaintiffs, the excess insurer, have stated a cause of action for equitable subrogation against ACCR, a primary insurer, under Florida law.

■ ACCR also contends that Plaintiffs have waived their right to bring an action for equitable subrogation because Plaintiffs failed to obtain an agreement from the primary insurer preserving Plaintiffs' right to subrogation. The cases cited by ACCR not only fail to support its contention, but instead support Plaintiffs position; no agreement is necessary to preserve the right to subrogation when the excess insurer has repeatedly denied liability and demanded that the primary insurer defend the insured party. *See Airmanship, Inc. v. United States Aviation Underwriters, Inc.,* 559 So.2d 89, 92 (Fla. 3d DCA 1990), *rev. denied,* 576 So.2d 294 (citing *Lehman–Eastern Auto Rentals v. Brooks,* 370 So.2d 14 (Fla. 3d DCA 1979) and *Lumbermens Mut. Casualty Co. v. Foremost Ins. Co.,* 425 So.2d 1158 (Fla. 3d DCA 1983) (holding that denials of liability preserved its right to equitable subrogation)). Plaintiffs' reserved their right to pursue ACCR for the amount of its policy limits covering Pamela Lason by letter on March 30, 1993.[15] Plaintiffs have not waived this cause of action.

### E. Plaintiffs Not Volunteers

■ ACCR also contends that Plaintiffs were volunteers in indemnifying Nurse Lason because Plaintiffs' policy only required them to indemnify Galen (f/k/a Humana, Inc.) as the "Named Insured", and not Nurse Lason. The Court finds ACCR is plainly wrong. Contrary to ACCR's contention the policy agrees to indemnify the "Insured", and the term "Insured" is defined to include "any Employee of the Named Insured [Humana, Inc.] ... while acting within the scope of the Employee's duties."[16] Plaintiffs' policy covered the direct liability of Nurse Lason, in addition to the hospital's vicarious liability for her actions, and the excess policy would have been required to indemnify her if even if she had been the only one found liable in the malpractice action. Parties who pay a debt in self-protection, to avoid suffering a loss if the obligation is not discharged, are exercising their right of subrogation and are not volunteers. *United States Automobile*

---

11. Doc. 1, Exh. B., Excess Liability Policy (London, 1985) (Amended June 1987), p. 1.

12. Doc. 42, p. 7.

13. The Court finds the case cited and discussed by ACCR, *Mission Nat'l Ins. Co. v. Hartford Fire Ins. Co.,* 702 F.Supp. 543 (E.D.Pa.1989) to be inapposite; the case distinguishes the risks of a builders and an all risk policy, neither of which is the type of policy at issue in the instant case.

14. While ACCR contended that it is an excess insurer in arguing priority of coverage, ACCR now inconsistently contends it is a primary insurer and that Plaintiffs may not maintain an action for equitable subrogation between primary insurers.

15. Doc. 45, Exh. 3.

16. Doc. 1, Exh. B., Excess Liability Policy, p. 1.

*Assoc. v. Hartford Ins. Co.*, 468 So.2d 545, 547 (Fla. 5th DCA 1985), *rev. denied*, 476 So.2d 676 (1985); *West American Ins. Co. v. Yellow Cab Co.*, 495 So.2d 204, 207 (Fla. 5th DCA 1986), *rev. denied*, 504 So.2d 769 (1987).

### F. ACCR had a duty to defend and to indemnify Nurse Lason

ACCR argues that it did not have a duty to indemnify or pay claims on behalf of Nurse Lason because "there had not been a legal determination of Nurse Lason's legal obligation" in the underlying medical malpractice case, and any payments on Lason's behalf were made voluntarily by Plaintiffs. Plaintiffs argue that equitable subrogation is available based on settlement of a claim.[17] Under Florida law one insurer states a valid cause of action against another insurer based on liabilities stemming from settlement of a claim. *See, e.g., Phoenix Ins. Co. v. Florida Farm Bureau Mutual Ins. Co.*, 558 So.2d 1048 (Fla. 2d DCA 1990); *Hartford Ins.*, 468 So.2d at 546.

Under ACCR's policy with Nurse Lason, ACCR had a duty to defend Lason for any personal injury claim relating to her professional services. Lason was named as a defendant in the *Boone* lawsuit. ACCR's duty to defend arose when the *Boone* suit was filed, "even if any of the charges of the claim [were] groundless, false or fraudulent" under the terms of its policy. At the time the *Boone* settlement was being negotiated, ACCR maintained that it was the excess insurer, not the primary insurer and, therefore, did not have to defend Lason.[18] The Court has determined that ACCR was a primary insurer, and as such, owed Lason the duty to defend her and indemnify her. Under insurance law, the primary insurer is required to settle a lawsuit when: the opportunity exists and it knows there is a real possibility of an adverse verdict in excess of the policy limits, and the facts concerning liability, evidence, and damages would lead a reasonable insurer to settle under such circumstances. *See Hollar v. International Bankers Ins. Co.*, 572 So.2d 937 (Fla. 3d

DCA 1990), *rev. dismissed* 582 So.2d 624 (1991). Otherwise the primary insurer is allowed to gamble with the insured's or the excess carrier's money. *See Ranger Ins. Co. v. Home Indemnity Co.*, 714 F.Supp. 956 (N.D.Ill.1989).

By virtue of its control of the insured's defense, the primary insurer has a duty to negotiate in good faith toward settlement. *See Kivi v. Nationwide Mutual Ins. Co.*, 695 F.2d 1285, 1287 (11th Cir.1983) (applying Florida law); *General Accident Fire & Life Assurance Corp. v. American Casualty Co. of Reading*, 390 So.2d 761, 765 (Fla. DCA 1980), *rev. denied* 399 So.2d 1142 (1981) (citing *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783 (Fla.1980), *cert. denied*, 450 U.S. 922, 101 S.Ct. 1372, 67 L.Ed.2d 350 (1981)). In a case in which the primary carrier sought to argue that liability had not been properly apportioned in settlement of the underlying tort action, after it had failed to defend in the action, the Seventh Circuit held that apportionment was unnecessary. *Aetna Casualty & Surety Co. v. Chicago Ins. Co.*, 994 F.2d 1254, 1259 (7th Cir.1993) (applying analogous Illinois insurance principles). "If the ordinary rule is to exhaust all other insurance before reaching the true excess policy, it makes sense to deplete even policies held by only one party before turning to the excess insurer." *Id.* at 1259. That reasoning, in combination with the state's policy requiring insurers to preserve their defenses (analogous to Florida's), led the Seventh Circuit to find that the primary carrier would be required to reimburse the excess carrier. *Id.* (reimbursement ultimately not required for lack of tender to primary carrier).

ACCR argues only that its situation is distinguishable from the cases cited above because ACCR did defend Nurse Lason and would have continued to defend her if Plaintiffs had not worked out a settlement with the *Boone* plaintiffs. "This is not a situation as Plaintiffs would suggest where [ACCR] 'stepped aside' and failed to defend its in-

---

**17.** Plaintiffs also point out that ACCR's affiliate paid a $2 million policy for Lason's codefendants, Dr. Rosen and his professional association.

**18.** Letters from ACCR's counsel to Plaintiffs' counsel are included as exhibits to Doc. 44.

sured leaving the duty to defend to another insurer.... [A]t the time that Plaintiffs settled the underlying medical negligence litigation, [ACCR] was defending its insured." Doc. 63, p. 4, 5.[19] To the contrary ACCR's correspondence indicates its intent to abandon Lason's defense and turn the responsibility over to Plaintiffs because ACCR believed itself to be the excess insurer. "[I]t would seem that you could defend both the hospital and Pamela Lason and that there would be no further need for my involvement in the case." Letter from Mr. Hurt to Plaintiffs' counsel dated April 2, 1992, Exh. B to Doc. 44. Even in the face of imminent settlement negotiations, ACCR refused to participate: "Humana's excess insurers approached the last mediation and will be approaching the impending one with the intention of making a genuine run at settling *Boone*. However, if [ACCR] fails to procure settlement authority in the amount of Nurse Lason's policy limits ... the mediation will be destined to fail for the third time." Letter from Evan Smith, Esq. to Lois Balsis, Esq. (forwarded to Jennings Hurt, Esq.) dated January 25, 1993, Exh. C to Doc. 44. Mr. Hurt responded to Smith's letter by asserting ACCR's position that its policy was excess to all of the hospital's coverage and without ever mentioning, no less denying, Lason's negligence. Letter from Jennings Hurt to Evan Smith dated January 29, 1993, Exh. D to Doc. 44.

As Lason's primary insurer, if ACCR sincerely believed that Lason was not at fault then ACCR should have allowed the settlement to proceed without her involvement, demanded that she not be included in the release, and proceeded to trial against the *Boone* plaintiffs to exonerate herself. ACCR did not choose this course of action, instead allowing the *Boone* plaintiffs to sign a release that included Nurse Lason, even after notice of the pending settlement from Plaintiffs' counsel. *See* Letter from Evan Smith to Jennings Hurt dated March 30, 1993.

### G. ACCR has waived the issue of Nurse Lason's liability

 As primary insurer, ACCR had a duty to defend Nurse Lason against the *Boone* claim. Under Florida law a primary carrier who has the duty to defend its insured, and who refuses to do so, cannot later challenge the reasonableness of the settlement or deny the liability of its insured following judgment against the insured. *Florida Farm Bureau Mutual Ins. Co. v. Rice*, 393 So.2d 552, 556 (Fla. 1st DCA 1980), *rev. denied*, 399 So.2d 1142 (Fla.1981) (insurer who refused to defend insured estopped from complaining about the reasonableness of consent judgment negotiated by insured's attorney and plaintiff without the insurer's participation). If the primary carrier refuses to defend it is estopped from later raising policy exclusions or defenses in subsequent actions. *See American Fidelity Fire Ins. Co. v. Johnson*, 177 So.2d 679, 683 (Fla. 1st DCA 1965), *cert. denied*, 183 So.2d 835 (Fla.1966). Such a refusal to defend is treated as if the primary carrier "renounced the contract and washed its hands of the whole affair." *Id.* Courts have interpreted the insurer's refusal to defend as a voluntary action, undertaken at the insurer's "own peril." *Rice*, 393 So.2d at 556.

In this case ACCR initially defended Nurse Lason, however, ACCR terminated its defense of Lason and opted not to participate in settlement negotiations, leaving negotiations to the true excess insurer, based on ACCR's erroneous belief that it was not the primary carrier. ACCR, having abandoned its duty to defend Lason and having failed to participate in negotiation of a settlement in good faith, cannot now complain that the settlement was inequitable as to Lason, or that Lason was only partially responsible for *Boone*'s injuries. *See United States Automobile Assoc. v. Hartford Ins. Co.*, 468 So.2d 545, 547 (Fla. 5th DCA 1985), *rev. denied* 476 So.2d 676 (Fla.1985) (insurer who refuses to defend cannot challenge reasonableness of

19. ACCR asserts that the Magistrate Judge's decision to deny Plaintiffs' prior Motion to Limit Discovery to issues surrounding the priority of coverages as opposed to the medical negligence issues is the equivalent of requiring Plaintiffs to prove Lason's negligence in the underlying medical malpractice action at trial. ACCR's argument is based on the belief that the Magistrate Judge's one-sentence order denying the restriction on pretrial discovery was intended to be dispositive on the ultimate issue and is incorrect.

settlement made with the injured party); *American Fidelity,* 177 So.2d 679, 683 (Fla. 1st DCA 1965), *cert. denied,* 183 So.2d 835 (1966) (insurer who chose to "step aside" cannot receive the benefit of different course it may have pursued had it taken command of the litigation). Because ACCR has waived the issue of Lason's liability, Plaintiffs' Motion in Limine (Doc. 57) to exclude testimony regarding Lason's liability in the underlying malpractice action is GRANTED.

### H. Galen's recovery from ACCR not limited by liability in *Boone* action

■ ACCR argues that Galen is a joint tortfeasor in the underlying malpractice action and, therefore, Galen is not entitled to recovery from ACCR in equitable subrogation because Galen's proper remedy would be contribution. This argument is completely spurious and ACCR cites no case law to support his theory. ACCR ignores the meaning of subrogation, which means that Galen, as an excess insurer, stands in the shoes of the insured, Nurse Lason, and assumed the rights she has against the primary insurer, ACCR. *See United States Fire Ins. Co. v. Morrison Assurance Co.,* 600 So.2d 1147, 1151 (Fla. 1st DCA 1992), *rev. dismissed* 604 So.2d 489 (1992). Additionally, Galen, Inc. points out that it was not a joint tortfeasor in the underlying action against Lucerne Medical Center and Nurse Lason. This Court has already addressed the issue and held that Plaintiffs state a cause of action for equitable subrogation. *See* Doc. 16, Order denying Motion to Dismiss.

### I. Recovery not sought for nonparties

■ Plaintiffs do not seek recovery for funds paid by nonparties. Plaintiffs allege that Walbrook is in liquidation and has not indemnified Galen for any portion of the *Boone* settlement. In a motion for summary judgment, the Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 918 (11th Cir.1993). ACCR, who

seeks summary judgment on this issue, has not provided any evidence that Walbrook ever indemnified Galen and should be a party to this action.

Second, ACCR alleges that HCII should be party to this action. However, as the Court has already determined, HCII is not entitled to recovery because the settlement amount ($6.6 million) was above the limits of HCII's $2.5 million primary policy. Neither Walbrook nor HCII is entitled to recovery from ACCR. ACCR itself lists as one element of an equitable subrogation claim, the requirement that the insurer have paid the obligation of the other insurer.[20] It has not shown that either of these other insurers, Walbrook or HCII, paid the obligation that ACCR allegedly owes. Neither Walbrook nor HCII need be party to this action.

ACCR also contends that the First Amended Complaint does not request relief on behalf of Anglo. However, the Complaint adequately states that it seeks declaratory and monetary relief for all Plaintiffs. Galen, as the successor to the named insured on the excess policy, is an appropriate party to maintain the cause of action against ACCR.

Having fully considered all of the bases asserted by ACCR and having found them unpersuasive, the Court denies ACCR's Motion for Summary Judgment.

### J. Bad faith claim under § 624.155

■ ACCR also contends in its Motion for Summary Judgment that Plaintiffs fail to state a claim under Fla.Stat. § 624.155(1)(b)(1), which requires an insurer to settle the underlying malpractice claim

> when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests.[21]

Florida courts have held that the statute only allows claims by first-party insureds and does not support third-party claims for bad faith. *Conquest v. Auto Owners Ins. Co.,* 637 So.2d 40 (Fla. 2d DCA 1994), *approved,* 658 So.2d 928 (Fla.1995). ACCR contends that

---

**20.** Doc. 42, p. 6 (citing *Great West Casualty Co. v. Canal Ins. Co.* 901 F.2d 1525 (10th Cir.1990)).

**21.** Fla.Stat.Ann. § 624.155 (West Supp.1995).

Plaintiffs are third parties and do not state a claim under § 624.155(1)(b)(1). As the Court has already determined, the doctrine of equitable subrogation applies in this case. Under the doctrine, the excess insurer "stands in the shoes" of the insured and is entitled to all of the rights of the insured. *See General Accident Fire & Life Assurance Corp. v. American Casualty Co. of Reading,* 390 So.2d 761, 765 (Fla. 3d DCA 1980), *rev. denied,* 399 So.2d 1142 (Fla.1981); *Allstate Ins. Co. v. Metropolitan Dade County,* 436 So.2d 976, 978 (Fla. 3 DCA 1983), *rev. denied,* 447 So.2d 885 (Fla.1984). Plaintiffs in this case have acquired the same rights that Nurse Lason has against ACCR, including a claim under § 624.155(1)(b)(1) for bad faith failure to settle. At least one Florida appellate court has held that an excess carrier could maintain an action against the primary carrier for failure to settle within policy limits under § 624.155. *United States Fire Ins. v. Morrison Assur. Co.,* 600 So.2d 1147, 1150 (Fla. 1st DCA 1992), *rev. dismissed,* 604 So.2d 489 (1992) (carrier need not prove underlying bad faith claim by the insured). Plaintiffs are equitably subrogated to Lason's rights against ACCR, and are entitled to bring a cause of action against ACCR for bad faith under § 624.155.

The parties have stipulated to the following undisputed facts,[22] that the Court finds relate to the bad faith claim under § 624.155.

In the *Boone* medical malpractice action Nurse Lason was named as one of the defendants against whom Boone alleged negligence. Nurse Lason was insured by a $1 million professional nurses liability policy issued by ACCR. The ACCR policy required ACCR to provide a defense to Lason. ACCR, through Jennings L. Hurt, Esq. and his law firm,[23] defended Lason on the issues of liability and damages in the *Boone* lawsuit. Mr. Hurt attended a mediation on January 13, 1992 on Nurse Lason's behalf. On April 2, 1992, Mr. Hurt sent a letter to counsel for the hospital's insurers requesting that and Lucerne

Medical Center's insurers take over the defense of Lason and otherwise indemnify her. On February 1, 1993, when the *Boone* claim was again mediated, Mr. Hurt attended on behalf of Lason. In July of 1993, the *Boone* claim settled for $6.6 million. ACCR did not contribute to the *Boone* settlement on behalf of its insured, Lason.

To state a claim for bad faith refusal to settle, the party must show that the insurer failed to settle the *Boone* claim against Lason under circumstances when it could have and should have done so if it had acted fairly and honestly toward Lason. Under Florida law the primary insurer must "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible where a reasonably prudent person faced with the prospect of paying the total recovery would do so." *Hollar v. International Bankers Ins. Co.,* 572 So.2d 937, 939 (Fla. 3d DCA 1990), *rev. dismissed,* 582 So.2d 624 (1991).

It is clear from the undisputed facts that ACCR refused to participate in settlement of the case when it had the opportunity to do so, based on the erroneous belief that it was an exempt carrier. Since the claim against Lason was not settled by her primary carrier, she sustained damages of $1 million in favor of the *Boone* plaintiffs. However, because Lason was covered by Plaintiffs' true excess policy, she was indemnified for those damages by Plaintiffs, and her rights against ACCR were subrogated to Plaintiffs.

While the Plaintiff has not sought summary judgment on Count III, it appears to the Court from the undisputed facts that Plaintiffs may be entitled to summary judgment on Count Three of the First Amended Complaint (Doc. 36). If summary judgment on this issue is granted, ACCR will be liable for damages, court costs, and reasonable attorney's fees incurred by the Plaintiffs. *See* Fla.Stat.Ann. § 624.155(3) (West Supp.1995). So as to afford ACCR notice and an opportunity to be heard, ACCR is directed to file a memorandum of law by February 5, 1996, if

---

**22.** Doc. 62, Joint Pretrial Statement, ¶¶ 2–19.

**23.** ACCR retained Mr. Hurt to represent Lason as her defense counsel for the claims asserted in the *Boone* litigation. Mr. Hurt also provided

insurance coverage counsel to ACCR regarding the priority of coverages between the various policies. Doc. 62, p. 39, ¶ 12 (undisputed facts).

ACCR wishes to file opposition. On February 6, 1996, the Court will take the matter under advisement and no hearing will be held.

### *CONCLUSION*

After consideration of all the facts the Court determines that there exists no genuine issue of material fact and Plaintiffs are entitled to summary judgement as a matter or law on the issue of priority of policies. The Court finds that ACCR's policy is a primary policy and should have been paid in settlement of the *Boone* case on Lason's behalf. Based on the undisputed stipulated facts, the Court finds that Plaintiffs may be entitled to summary judgment on Count III of the Amended Complaint.

Based on the foregoing it is ORDERED as follows:

1. Plaintiffs' Motion for Partial Summary Judgment (Doc. 39) is GRANTED.

2. Defendant's Motion for Summary Judgment (Doc. 41) is DENIED.

3. Plaintiffs' Motion in Limine (Doc. 57) to exclude evidence regarding Lason's liability in the underlying malpractice action is GRANTED.

DONE AND ORDERED.