TWIN CITY FIRE INSURANCE CO., Liberty Mutual Insurance Co., and J.C. Penney, Inc., Plaintiffs,

v.

FIREMAN'S FUND INSURANCE CO., Defendant.

Fireman's Fund Insurance Co., Plaintiff,

v.

J.C. Penney, Inc., Liberty Mutual Insurance Co., and Twin City Fire Insurance Co., Defendants.

No. 03–62136–CIV–SEITZ, 03–62143–CIV–SEITZ.

United States District Court, S.D. Florida.

Sept. 12, 2005.

Kenneth Philip Carman, Carman Beauchamp & Sang, Boca Raton, FL, James Kendall Clark, Clark Robb Mason Coulombe & Buschman, Miami, FL, for Plaintiffs.

Joel Victor Lumer, Michael Andrew Mullen, Gaebe, Mullen, Antonelli, Esco & Dimatteo, Coral Gables, FL, for Defendant.

### OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT

SEITZ, District Judge.

THIS MATTER is before the Court upon the Motions for Summary Judgment

filed by Twin City Fire Insurance Company [DE–37], Liberty Mutual Insurance Company and J.C. Penney, Inc. [DE–41], and Fireman's Fund Insurance Company [DE–54]. These consolidated actions stem from a wrongful death suit brought by the estate of Jessica Enriquez, a young child who was killed when a shelving unit manufactured by Trendlines Home Fashions, Inc., fell on her at a J.C. Penney outlet store. These cases require interpretation of provisions in certain insurance policies issued by Twin City, Liberty Mutual, and Fireman's Fund to Trendlines. Specifically, the question before the Court is whether Fireman's Fund is contractually required to contribute funds towards the settlement that Liberty Mutual and Twin City reached in the underlying action Enriquez lawsuit, and if so, in what amount.

Twin City, Liberty Mutual, and J.C. Penney move for summary judgment arguing that Fireman's Fund is required to contribute towards the settlement of the underlying Enriquez action because the claims settled therein are covered under the terms of the vendor's endorsement. Twin City contends that Fireman's Fund must reimburse Twin City in the amount of $1,295,000, and that Liberty Mutual and J.C. Penney are not entitled to any reimbursement. Liberty Mutual and J.C. Penney likewise argue that Fireman's Fund is obligated under the terms of the vendor's endorsement to contribute towards the Enriquez settlement, but contend that they are entitled to reimbursement of up to three millions dollars. Fireman's Fund denies that it is required to contribute towards the settlement, and seeks final judgment in its favor.

Upon careful review of the motions, the responses and replies thereto, the insurance policies at issue, the relevant portions of the record, and the applicable case law, the Court finds that the vendor's endorsement in the Fireman's Fund insurance policy obligates Fireman's Fund to contribute towards the settlement that J.C. Penney and Liberty Mutual reached in the Enriquez action. Although Fireman's Fund contends that it is not required to contribute towards the settlement because its policy did not cover claims premised on J.C. Penney's negligence, the plain and unambiguous language of the vendor's endorsement at issue extends coverage for bodily injuries "arising out of" Trendlines' products which are bought and sold in the regular course of J.C. Penney's business. Further, the Court finds that Twin City is entitled to $1,295,000 from Fireman's Fund, while Liberty Mutual and J.C. Penney are not entitled to any additional reimbursement from Fireman's Fund. Accordingly, Twin City's Motion for Summary Judgment is granted, and the motions of Liberty Mutual and J.C. Penney and Fireman's Fund are denied.

## I. FACTUAL BACKGROUND

In May 1997, four year old Jessica Enriquez was killed when a space saver wall unit manufactured by Trendline Home Fashions, Inc. d/b/a Trendlines/Great Connections ("Trendlines") fell on her while she was shopping with her parents at a J.C. Penney outlet store in Sunrise, Florida. Compl. ¶ 14. The child's parents brought a wrongful death action ("the Enriquez action") against both Trendlines and J.C. Penney, asserting claims of products liability and premises liability. *Id.* ¶¶ 18–19. This case concerns the manner in which the insurance policies issued by various companies to Trendlines and J.C. Penney should be relied upon to cover the settlement of the Enriquez action.

At the time of the accident, Trendlines and J.C. Penney were each insured under

both primary insurance policies and umbrella liability policies. Trendlines was insured under a Fireman's Fund primary insurance policy (the "FF Primary Policy"), with a limit of liability of $1 million. *Id.* ¶ 8. The FF Primary Policy contains a vendor's endorsement providing that any vendor of Trendlines' products is an additional insured "with respect to Bodily Injury or Property Damage arising out of . . . [Trendlines'] products which are distributed or sold in the regular course of the vendor's business." *Id.* ¶ 9. Plaintiffs contend that J.C. Penney was covered under this vendor's endorsement in the FF Primary Policy. *Id.* ¶ 21. Trendlines was also insured under a Fireman's Fund umbrella liability policy (the "FF Excess Policy"), with a $10 million limit of liability. *Id.* ¶ 10. The FF Excess Policy provides that "[a]ny person or organization who is an insured in primary policies at the inception of our policy is an insured" under the excess policy as well. *Id.* ¶ 11. J.C. Penney, in turn, was insured under a Liberty Mutual commercial general liability insurance policy (the "Liberty Mutual Policy"), with a $2 million limit of liability and a $1 million deductible, as well as a Twin City umbrella liability policy (the "Twin City Policy") with a $15 million limit of liability, excess of $2 million. *Id.* ¶¶ 12–13.

On November 30, 1999, Fireman's Fund settled what it characterized as all of the products liability claims against both Trendlines and J.C. Penney in the Enriquez Action for $175,000 (the "Trendlines Settlement"). *Id.* ¶ 22. Later that day, Twin City and Liberty Mutual separately settled all of the remaining claims against J.C. Penney for a total of $4 million dollars (the "J.C. Penney Settlement"). *Id.* ¶ 23. Of this $4 million, J.C. Penney paid its $1 million deductible under the Liberty Mutual Policy, Liberty Mutual paid $1 mil-

lion, and Twin City paid the remaining $2 million under the Twin City Policy. *Id.* Plaintiffs contend that Fireman's Fund has refused to contribute to this $4 million settlement, arguing that the claims settled in the J.C. Penney Settlement were for J.C. Penney's own active negligence on a premises liability theory and, therefore, were not covered under the Fireman's Fund policies. *Id.* ¶ 24.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(c)). The moving party bears the initial responsibility of showing the court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that initial burden is met, the party opposing summary judgment must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing Fed.R.Civ.P. 56(c)); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favor-

able to the non-moving party. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir.1998) (citations omitted). The Court must then decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505). Here, all of the parties agree that there are no disputed issues of fact and that this case is properly decided on summary judgment. It is with these principles in mind that the Court reviews the three pending motions for summary judgment.

## B. The Vendor's Endorsement Provides Coverage for J.C. Penney's Negligence

■ The first question before the Court is whether the vendor's endorsement in the Fireman's Fund primary policy obligates Fireman's Fund to contribute towards the J.C. Penney settlement. Fireman's Fund argues that it need not contribute to the J.C. Penney settlement because the claims settled therein relate only to J.C. Penney's negligence. Fireman's Fund further contends that because the vendor's endorsement covers only product liability claims relating to Trendlines' products—and not claims that the vendor was negligent in its distribution of these products—it is absolved of any obligation to contribute towards the J.C. Penney settlement. In turn, Twin City, Liberty Mutual and J.C. Penney assert that the vendor's endorsement provides coverage for J.C. Penney in the Enriquez lawsuit and that, therefore Fireman's Fund is required to contribute to the settlement.

■ By its clear and unambiguous language, the vendor's endorsement extends coverage under the Fireman's Fund policies to vendors "with respect to Bodily Injury or Property Damage arising out of ... [Trendlines'] products which are distributed or sold in the regular course of the vendor's business." Courts have defined the term "arising out of" as "broad, general, and comprehensive terms" resulting in broad coverage. *See Ohio Cas. Ins. Co. v. Continental Cas. Co.*, 279 F.Supp.2d 1281, 1284 (S.D.Fla.2003) (citing *Nat'l Indem. Co. v. Corbo*, 248 So.2d 238, 240 (Fla. 3d DCA 1971)).[1] Indeed, the majority rule in Florida is that the term "arising out of" is "broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' ... or 'having a connection with.'" *Allstate Ins. Co. v. Safer*, 317 F.Supp.2d 1345, 1349–50 (M.D.Fla.2004) (citations omitted). Further, numerous Florida courts have found the term "arising out of" to be unambiguous, such that no extrinsic evidence of its meaning or intent is necessary. *Id.* (citing cases).

■ Here, a reading of the plain language of the policy demonstrates that Fireman's Fund is required to contribute towards the J.C. Penney settlement in the Enriquez action. Under basic insurance contract interpretation principles, where the policy language is clear and unambiguous, the Court must give effect to the plain language of the policy and any vendor's endorsement contained therein. *Riveroll v. Winterthur Int'l, Ltd.*, 787 So.2d 891, 892 (Fla. 3d DCA 2001); *see also Coleman v. Valley Forge Ins. Co.*, 432 So.2d 1368, 1370 (Fla. 2d DCA 1983). The language "arising out of" is unambiguous, and clear-

---

**1.** Florida law applies to this diversity action. *See Golden Door Jewelry Creations, Inc. v.* *Lloyds Underwriters Non–Marine Ass'n,* 117 F.3d 1328, 1336 n. 3 (11th Cir.1997).

ly extends coverage to cases in which bodily injury flows from Trendlines' products, which are distributed or sold in the regular course of J.C. Penney's business. Further, it is undisputed that the claims against J.C. Penney in the Enriquez action arose out of injuries caused by Trendlines' shelving unit. Therefore, the vendor's endorsement covers J.C. Penney in the Enriquez lawsuit.[2]

■ Fireman's Fund's argument that the vendor's endorsement was not intended to cover bodily injury or property damage occasioned by the active negligence of J.C. Penney or its employees is without legal support. Fireman's Fund premises this argument on, *inter alia*, (1) affidavits from insurance industry experts, like Brian M. Farrell, Sr. [DE–60], purporting to testify as to the intent behind the creation of the vendor's endorsement; and (2) cases in which the vendor's endorsement did not contain the "arising out of" language. As to the former, it is well-established in Florida that introduction of extrinsic evidence regarding the drafting history or intent behind an insurance policy is "inappropriate and unnecessary" when the policy language is unambiguous. *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp.*, 636 So.2d 700, 705 (Fla.1993); *see also Certain British Underwriters at Lloyds of London, Eng. v. Jet Charter Service, Inc.*, 789 F.2d 1534, 1535 (11th Cir.1986). Thus, having found

the vendor's endorsement to be clear and unambiguous, the Court cannot consider extrinsic evidence regarding what degree of coverage the endorsement was meant to provide, particularly from individuals who did not participate in the creation of the particular insurance policy at issue. Next, as to the latter issue, cases construing vendor's endorsements that do not contain the "arising out of" language are inapposite and do not support Fireman's Fund's argument.

Here, there is nothing in the plain language of the vendor's endorsement that limits coverage to claims asserting a particular theory of liability, as Fireman's Fund contends. If Fireman's Fund had intended the endorsement to cover only products liability claims, and not to extend to claims of negligence, it could have so stated in the endorsement. It did not. Further, there is no policy exclusion for injuries directly caused by the product which are also attributable to a party's negligence. Therefore, the Court finds that the endorsement extends coverage to J.C. Penney in its settlement of the Enriquez action, and Fireman's Fund is required to contribute towards that settlement.[3]

## C. Fireman's Fund Must Reimburse Twin City $1,295,000

■ The remaining issue in dispute is the manner in which the J.C. Penney set-

2. Twin City, Liberty Mutual, and J.C. Penney also cite to a number of cases outside of Florida finding that vendor's endorsements with similar "arising out of" language provide coverage to claims against the vendor for its own negligence. *See Makrigiannis v. Nintendo of Am., Inc.*, 442 Mass. 675, 815 N.E.2d 1066, 1071 (2004); *Kmart Corp. v. Fireman's Fund Ins. Co.*, 88 F.Supp.2d 767, 772 (E.D.Mich.2000); *Pep Boys v. Cigna Indem. Ins. Co. of N. Am.*, 300 N.J.Super. 245, 692 A.2d 546 (1997); *Sportmart, Inc. v. Daisy Mfg. Co.*, 268 Ill.App.3d 974, 206 Ill.Dec. 355, 645 N.E.2d 360, 363 (1994). While these cases do

not interpret Florida law, the Court finds the analysis therein to be sound and in line with the insurance policy interpretations of Florida courts.

3. Fireman's Fund also asks the Court to dismiss the case on the grounds that: (1) the claims asserted by Twin City, Liberty Mutual, and J.C. Penney are barred under the one-year statute of limitations applicable to cases under Florida's Uniform Contribution Among Tortfeasors Act, Fla. Stat. § 768.31(4)(d); and (2) there can be no action for contribution when a joint tortfeasor settles but the settle-

tlement should be allocated. The "other insurance" clause in the various policies governs the allocation. " 'Other insurance' clauses limit an insurer's responsibility for a claim if 'other insurance' is able to cover it." *Home Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 229 F.3d 56, 60 (1st Cir. 2000). There are three basic types of other insurance clauses. *See generally id.* at 61; *see also Jones v. Medox, Inc.*, 430 A.2d 488, 489 n. 1 (D.C.Cir.1981). The first is the prorata clause, which usually provides that the allocation will be based on the limits of the applicable policies. *Home Ins. Co.*, 229 F.3d at 60. The second is known as an "escape clause," because it simply precludes coverage for a claim if other insurance is available. *Id.* The third type of clause is an "excess clause," which provides that a policy is excess to other policies and is not reached unless other insurance is insufficient to cover the claim. *Id.* Three of the policies at issue in this case contain excess clauses.

 Where there is no incompatibility among other insurance provisions, they are to be enforced by their terms. *See, e.g., Jones v. Medox, Inc.*, at 489. Difficulties arise when two policies contain the same other insurance provision. For example, where two policies both have excess clauses, there is no direct way to determine which should be treated as excess simply by reference to the policies. In such cases, each policy provides that it does not attach until the other has paid its limits. "[I]f a court were to give literal effect to each of the excess clauses, each policy would be cancelled out and the final result

would depend upon which policy was read first." *State Farm Mut. Auto. Ins. Co. v. Bogart*, 717 P.2d at 452.

Courts have, therefore, developed what is known as the "rule of mutual repugnancy." Under that rule, "where two policies cover the same occurrence and both contain 'other insurance' clauses, the excess insurance provisions are mutually repugnant and must be disregarded. Each insurer is then liable for a prorata share of the settlement or judgment." *Id.* (internal citations and quotation marks omitted); *see also Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.*, 254 F.3d 987, 1005 (11th Cir.2001) (applying the rule of mutual repugnancy under Florida law) (citing *Travelers Ins. Co. v. Lexington Ins. Co.*, 478 So.2d 363, 365 (Fla. 5th DCA 1985)). Therefore, instead of attempting to reconcile two incompatible provisions, courts in such situations will disregard both provisions and prorate the loss. *Bogart*, 717 P.2d at 452; *see also Galen Health Care, Inc. v. American Cas. Co. of Reading, Pa.*, 913 F.Supp. 1525, 1530 (M.D.Fla.1996) (where two insurance policies contain similar excess clauses, the " 'other insurance' clauses cancel each other out and both insurers share the loss on a pro rated basis.").

1. *Applying the 'Other Insurance' Clauses, the Liberty Mutual Policy is Excess of the Fireman's Fund Primary Policy and Fireman's Fund Must Contribute $825,000 for its Share of the Primary Loss*

 The "other insurance" provision in the Liberty Mutual policy provides that:

---

ment does not extinguish all liability of the non-settling joint tortfeasor. However, both of these arguments are premised on the application of the Uniform Contribution Among Tortfeasors Act to this case. The Complaint in this case is not a contribution action against a joint tortfeasor such that the statute would apply. Instead, the Complaint states a

claim for equitable contribution against a co-insurer of J.C. Penney, for which there is ample support in the case law. *See Guarantee Ins. Co. v. Gulf Ins. Co.*, 628 F.Supp. 867 (S.D.Fla.1986); *see also Gulf Ins. Co. v. Continental Cas. Co.*, 464 So.2d 207 (Fla. 3d DCA 1985). The Florida Statute is, therefore, inapplicable.

"[t]he insurance afforded by this policy is excess insurance, and does not apply to the extent that any other valid and collectible insurance is available to the Insured, whether on a primary, contributory or excess basis, or otherwise . . . ." Aff. Of Michelle I. Turner ("Turner Aff."), Ex. A at § VI(B)(5). The Fireman's Fund Primary Policy, on the other hand, provides that this insurance is "primary."[4] *Id.*, Ex. C, CGL Coverage Form at § IV(4)(a). It also provides that "if this insurance is primary, our obligations are not affected unless any of the other insurance is also primary." *Id.*

In this case, the Liberty Mutual policy provides that it is excess, and the Fireman's Fund Primary Policy provides that it is primary. These policies' other insurance clauses are compatible and must therefore be enforced in accordance with their terms. *See Jones,* at 489. The Fireman's Fund Primary Policy is primary, and the Liberty Mutual policy is excess of the Fireman's Fund Primary Policy. Thus, Fireman's Fund must exhaust the limits of the Fireman's Fund Primary Policy before the Liberty Mutual policy is reached.

Fireman's Fund has already paid $175,000 of its $1 million primary limit in settling the claims that Fireman's fund unilaterally denominated "product liability claims," so that $825,000 of the $1 million limit under the Fireman's Fund Primary Policy is still available. Therefore, Fireman's Fund's remaining share of the primary loss is $825,000. Once Fireman Fund's limit was reached, Liberty Mutual was obligated to contribute its limits of $2 million before either of the excess policies

is reached. J.C. Penney and Liberty Mutual together have already paid their $2 million limit, and they are thus not entitled to any reimbursement from Fireman's Fund. The remaining $1,175,000 must be allocated between the Twin City policy and the Fireman's Fund Excess Policy.

2. *The Twin City Policy and the Fireman's Fund Excess Policy Must Pay the Remaining $1.175 Million on a Pro–Rata Basis, With Fireman's Fund's Share of the Excess Loss Totaling $470,000*

■ As noted above, where a court must allocate between two policies at the same level that contain incompatible excess clauses, the majority rule is that the two excess clauses cancel each other out, and the loss is pro-rated between the two policies. *Galen,* 913 F.Supp. at 1530. Here, the Fireman's Fund Excess Policy provides that it is excess to any other insurance. Turner Aff., Ex. D, Supercover Policy § I(A)(1). The Twin City Policy also provides that it is excess to any other insurance. *Id.*, Ex. B, Conditions at ¶ 7. These two excess provisions are mutually repugnant, as giving effect to both of them would leave the insured without any overage at all. Accordingly, the proper method of allocation is to disregard the other insurance clauses, treat the two excess insurers as co-excess insurers, and pro-rate the loss between the two excess policies. *See Galen,* 913 F.Supp. at 1530; *see also Gulf Ins. Corp. v. Continental Cas. Co.,* 464 So.2d 207 (Fla. 3d DCA 1985).

Twin City's policy limits were $15 million, while the Fireman's Fund Excess Policy limits were $10 million. Thus, under

---

4. The Fireman's Fund Primary Policy provides that it is excess in certain narrow conditions—*e.g.,* where the other policy is fire insurance or if the loss arises out of the use of aircraft, autos or watercraft. These conditions do not apply in the present case.

the proration method of allocation, Fireman's Fund should have paid 2/5 of the $1,175,000 remaining after the primary policies were exhausted. The portion of the excess loss properly allocated to Fireman's Fund is $470,000. Twin City should have paid 3/5 of the $1,175,000. Therefore, the portion of the excess loss properly allocated to Twin City is $705,000.

Twin City paid $2 million towards the J.C. Penney Settlement, when it should have paid only $705,000. Fireman's Fund, however, paid nothing towards the J.C. Penney Settlement, when it should have paid $1,295,000 —— $825,000 from the Fireman's Fund Primary Policy, and $470,000 from the Fireman's Fund Excess Policy. Liberty Mutual and J.C. Penney together properly paid their full limits of $2 million. Fireman's Fund must therefore reimburse Twin City in the amount of $1,295,000, and J.C. Penney and Liberty Mutual are not entitled to any reimbursement from Fireman's Fund.[5] Accordingly, Twin City's motion for summary judgment must be granted, Liberty Mutual and J.C. Penney's motion for summary judgment must be denied (to the extent that it sought reimbursement from Fireman's Fund for Liberty Mutual and J.C. Penney's contribution towards the J.C. Penney Settlement), and Fireman's Fund motion for summary judgment must be denied.

## III. CONCLUSION

Based on the foregoing reasons, it is hereby

ORDERED that:

(1) Twin City Fire Insurance Company's Motion for Summary Judgment [DE–37] is GRANTED. Twin City shall be awarded case dispositive final judgment declaring that Fireman's Fund was required to pay its share of the J.C. Penney Settlement, and Fireman's Fund shall be required to reimburse Twin City in the amount of $1,295,000, per the allocation provisions set forth in the applicable insurance policies;

(2) Liberty Mutual and J.C. Penney's Motion for Summary Judgment [DE–41] is DENIED, the Court having determined that Liberty Mutual and J.C. Penney paid their rightful share towards the J.C. Penney settlement and are therefore not entitled to any recovery or reimbursement from Fireman's Fund;

(3) Fireman's Fund's Cross–Motion for Summary Judgment [DE–54] is DENIED, the Court having determined that the J.C. Penney Settlement was covered under the Fireman's Fund policies and Fireman's Fund was required to contribute towards the J.C. Penney Settlement;

(4) All pending motions not otherwise ruled upon are DENIED AS MOOT; and

(5) These consolidated cases are CLOSED.

5. Liberty Mutual and J.C. Penney contend that they are entitled to receive their $1 million deductible back before Twin City is reimbursed for the excess portion of the J.C. Penney settlement that it paid. However, it is a well-established principle that an excess insurer does not pay until the primary coverage is exhausted. *See supra* p. ——. Liberty Mutual and J.C. Penney have failed to present any compelling argument or binding case law demonstrating that this principle excludes the deductible.